ARC ELECTRICAL CONSTRUCTION CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6692-82, 20563-82.     Filed November 23, 1988.

Paul Friedman, for the petitioner.
Kevin M. Flynn, for the respondent.

PARR, *Judge:* This case is currently before the Court on petitioner's motion to suppress certain evidence presented at trial. Petitioner asserts that the Government failed to demonstrate a "particularized need" for access to certain grand jury materials as required by *United States v. Sells Engineering, Inc.,* 463 U.S. 418 (1983).

Arc Electrical Construction Co. (Arc) and several of its officers and directors were under grand jury investigation in the Southern District of New York. The Internal Revenue Service began its investigation of petitioner sometime before November 1979. From November 1979 through August 1981, the Internal Revenue Service (IRS) conducted a joint civil and criminal investigation. In August 1981, the IRS referred the case to the Tax Division of the Justice Department. The Justice Department authorized a title 26 grand jury which was joined with an ongoing title 18 grand jury in the Southern District of New York. On November 22, 1985, petitioner was named in a 4-count information.

Count 1 of the information charged that Arc conspired to commit an offense against the United States, and to defraud the United States and the IRS by obstructing the lawful governmental functions of the IRS in assessment and collection of revenue, and that Arc further conspired "to willfully commit other offenses against the United States, to wit, to violate sections 7201 and 7206(1) and (2) of Title 26, United States Code." (The facilitation of tax evasion by employees, officers, and shareholders, subscription to false returns subject to the penalties of perjury, and aiding and assisting in the preparation of false returns.)

Count 2 of the information charged that petitioner had willfully and knowingly attempted to evade a large part of its corporate income tax liability. Counts 3 and 4 charged Arc with aiding and abetting in the preparation of its own false and fraudulent corporate tax returns for the 1978 and 1979 taxable years.

Under an agreement between petitioner and the United States, petitioner pleaded guilty to Count 1 of the information and was sentenced to a $10,000 fine. Counts 2 through 4 were dismissed.

Pursuant to rule 6(e)(3)(C)(i) of the Federal Rules of Criminal Procedure (rule 6(e)), respondent sought to obtain access to the records which were presented to the grand jury and the testimony heard by the grand jury. Respondent made his motion through Assistant U.S. Attorney Vincent Briccetti of the Southern District of New York.

Mr. Briccetti's affidavit in support of the motion was based upon a review of the United States attorney's files and discussions with Special Agent Walter Gross, who was involved in the grand jury investigation. Specifically, Mr. Briccetti represented to the District Court of the Southern District of New York that:

6. The testimony and books, records, and other documents received by the grand jury indicated that Arc, Minervini, DeFabritus, and Stinchfield conspired to defraud the IRS and to facilitate the evasion of corporate and personal income taxes by Arc and its officers, shareholders and employees. Specifically, they engaged in a scheme whereby Arc, through the use of false or fictitious vendor invoices, paid various personal expenses of officers and shareholders. These personal expenses were disguised as legitimate corporate expenses for cost of goods sold and Arc then claimed deduction against income based on the false invoices. Between 1974 and 1977, Arc unlawfully deducted as business expenses more than $2 million of such personal expenses.

7. The evidence obtained during the grand jury investigation established that the scheme referred to above was carried out from 1974 through 1980.

8. On November 2, 1985, before Judge Whitman Knapp, Arc and Minervini pleaded guilty to conspiracy to commit income tax evasion and to defraud the United States during the period 1974 to 1980, in violation of 18 U.S.C. sec. 371. * * *

Briccetti also informed the District Court that Mr. Flynn, an IRS attorney, had advised that the IRS had issued a statutory notice of deficiency to Arc for the 1974 and 1977 taxable years. The 1977 deficiency was based most significantly on cost of goods sold items and the IRS had proposed an adjustment of $1,505,341. The 1974 deficiency was attributable to the IRS' disallowance of certain tax credits claimed in 1977 and carried back to 1974.

Briccetti also told the Court that Flynn claimed the total tax due from Arc for 1974 and 1977 combined was $1,006,999 plus a civil fraud addition of $503,496. He also told the Court of the pending litigation in the Tax Court contesting these deficiencies; that the IRS bore the burden of proof for fraud and that the IRS did not possess any of the false or fictitious documents.

Further, Briccetti told the District Court that the IRS had requested discovery of these particular items, but that they were not in Arc's possession. Briccetti's affidavit specifically continued as follows:

18. Based upon my review of the files and my discussions with Special Agent Gross, I am aware that substantial documentation of the type referred to in the preceding paragraph was obtained from Arc and others and then presented to the grand jury in this case; it is now in the possession of the United States Attorney's Office. In addition, several witnesses testified about these matters in the grand jury.

19. According to Mr. Flynn, [the IRS District Counsel attorney assigned to the civil case] Arc's attorney indicated that Arc intends to claim at trial of the Tax Court cases that a former officer of Arc, who was murdered in 1981, embezzled $13 million from the corporation. Mr. Flynn has told me that he has no information relating to the embezzlement issue. Based on my review of the files and my discussions with Special Agent Gross, I am aware that the grand jury *did* receive evidence relating to the alleged embezzlement.

\*     \*     \*     \*     \*     \*     \*

21. In sum, evidence relevant to the proof of the Government's case in Tax Court for the tax years 1974 and 1977 was presented to the grand jury investigating Arc and its officers, directors, and shareholders (*i.e.,* Minervini, DeFabritus, and Stinchfield). The extensive efforts of the grand jury in obtaining testimony and the documents described above would be extremely difficult and expensive—in fact, nearly impossible—to duplicate at this time even assuming that these materials and witnesses would still be available. In my opinion, the IRS has no independent means to prove its case in Tax Court without access to the grand jury information. Indeed, if disclosure is not permitted, the IRS may not have sufficient evidence to go forward with its case in Tax Court; as a result, the Government would have to forego substantial taxes and penalties otherwise recoverable from a corporation already convicted of conspiracy to commit tax evasion and to defraud the United States.

22. In addition, without an order for disclosure, IRS counsel is prohibited from discussing significant details of the case with the revenue and special agents assigned to the criminal investigation.

23. The need for disclosure is greater than the need for continued secrecy in this case since Arc and its principals have already pleaded

guilty to tax crimes and been sentenced and since the criminal investigation has ended.

24. It is vital to the Government's interest that the IRS obtain the testimony and documentation furnished to the grand jury so that it may properly prepare for trial in United States Tax Court of the civil fraud tax cases involving Arc and meet its burden of proving fraud with intent to evade tax.

Judge Palmieri of the District Court for the Southern District of New York granted the motion on November 7, 1986. Respondent was given access to documents and transcripts from the grand jury.

Petitioner argues that the Supreme Court's decisions interpreting rule 6(e)(3)(C)(i), Fed. R. Crim. P., in *United States v. Baggot*, 463 U.S. 476 (1983), and *United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983), require Government officials to show a "particularized need" before "matters occurring before the grand jury" may be disclosed.[1] Petitioner continues that even though the District Court's rule 6(e) order was issued after the *Baggot* and *Sells* decisions, the District Court was given misleading information and, in fact, the Government failed to establish a "particularized need" as required by *Sells* to have access to the grand jury testimony. As a result, petitioner contends that the testimony of witnesses who appeared at the Tax

---

[1] Rule 6(e)(3)(C) of the Federal Rules of Criminal Procedure provides:

(e) Recording and Disclosure of Proceedings.—

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(3) Exceptions.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminary to or in connection with a judicial proceeding;

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;

(iii) when the disclosure is made by an attorney for the government to another federal grand jury; or

(iv) when permitted by a court at the request of an attorney for the government, upon a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

Here there is no question that the Government sought disclosure "in connection with a judicial proceeding." Petitioner only argues that the Government failed to demonstrate a "particularized need" for disclosure.

Court trial, who had previously testified before the grand jury, should be suppressed.

As an aside, the parties are not in dispute as to the correct standard to be applied by a District Court in granting a rule 6(e) order. The Supreme Court decisions in *Baggot* and *Sells* make it quite clear that the Government must demonstrate a "particularized need" before any "matter occurring before the grand jury" may be disclosed. Within this requirement, the Government must indicate that the need for disclosure outweighs the need for continued secrecy and also must specify which items are necessary for disclosure.

Thus, petitioner is not arguing that this standard is inappropriate. Additionally, petitioner does not argue that the District Court failed to utilize this standard in deciding to disclose the grand jury testimony to the Government. Rather, petitioner contends that the *Sells* standard was inappropriately applied in that the Government failed to establish a "particularized need" and that the Government, through Briccetti's affidavit, misled the District Court as to the true facts of this Tax Court case.

Respondent counters on three fronts. First, respondent states that based on considerations of comity and judicial efficiency the Court should not reexamine the propriety of a valid rule 6(e) order. Second, respondent asserts that he reasonably relied upon the validity of the rule 6(e) order and exclusion of the evidence would be inappropriate in this case. Finally, respondent claims that even though the Court need not reexamine the rule 6(e) order, the Government did demonstrate a "particularized need" for the disclosure of the testimony within the meaning of *Sells*.

We agree with respondent's first argument. As such, we need not address whether or not a particularized need for access to the grand jury testimony was demonstrated and whether or not suppression is an appropriate sanction in this case.

We deny petitioner's motion to suppress the testimony of two of respondent's witnesses based on the principles of comity and judicial economy. The doctrine of comity was best described by the Supreme Court in *Mast, Foos & Co. v.*

*Stover Mfg. Co.,* 177 U.S. 485, 488-489 (1900), when it stated:

> Comity is not a rule of law, but one of practice, convenience, and expediency. It is something more than mere courtesy, which implies only deference to the opinion of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same questions. But its obligation is not imperative. If it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity persuades; but it does not command. It declares not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other coordinate tribunals. Clearly it applies only to questions that have been decided, and which arose under the same facts.

In this case, the Supreme Court has settled the law regarding the standard to be applied in issuing a rule 6(e) order to the Government. Since this is the standard which the District Court applied, we have no reason to review that court's decision. That is not to say we do not have the authority to reexamine another court's decision when it potentially affects the evidence or outcome of a trial in this Court. See *Kluger v. Commissioner,* 83 T.C. 309, 316 (1984). However, without some reason in addition to petitioner's request, we will not second-guess the District Court's opinion.

Our decision to rely on these principles is supported on three grounds. First, the District Court for the Southern District of New York, which issued the rule 6(e) order, was the supervisory court of the grand jury. See *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211 (1979). Second, although so alleged by petitioner, none of the information contained in Mr. Briccetti's affidavit was misleading. Third, contrary to petitioner's assertion, de novo review by the

Tax Court of the District Court's determination is not the only remedy available after a rule 6(e) order is issued.

In this case, unlike *Douglas Oil Co. v. Petrol Stops Northwest, supra,* the grand jury was convened in the same court which ultimately issued the rule 6(e) order. Thus, the District Court for the Southern District of New York was the court in the best position to determine whether or not it was appropriate to issue a rule 6(e) order. As the Supreme Court stated in *Douglas Oil*:

> Quite apart from practical necessity, the policies underlying Rule 6(e) dictate that the grand jury's supervisory court participate in reviewing such requests, as it is in the best position to determine the continuing need for grand jury secrecy. * * * [*Douglas Oil Co. v. Petrol Stops Northwest, supra* at 225.]

Petitioner alleges this case calls for our intervention on two other grounds. Petitioner asserts: (1) That a motion to suppress the evidence in the Tax Court was the only available remedy; and, (2) that Judge Palmieri may have been misled by Mr. Briccetti's affidavit and based upon the erroneous affidavit, incorrectly applied the Sells standard. Paragraph 21 of Briccetti's affidavit states:

> Indeed, if disclosure is not permitted, the IRS may not have sufficient evidence to go forward with its case in Tax Court; as a result, the Government would have to forego substantial taxes and penalties otherwise recoverable from a corporation already convicted of conspiracy to commit tax evasion and to defraud the United States.

Petitioner argues this statement could be misleading in that Briccetti failed "to tell Judge Palmieri that the tax evasion was not that of petitioner but of various other individuals."

However, the criminal information did not charge Arc merely with conspiracy to commit tax evasion on behalf of its officers. Paragraph 6 of count 1 of the criminal information specifically states:

> 6. It was an object of this conspiracy for ARC, the defendant corporation, to maintain false books, underlying records and back up documentation to facilitate personal income tax evasion on the part of certain executives and employees at ARC, * * * This was accomplished at ARC, the defendant corporation, by, among other things, making use of false invoices and purchase orders which were false in their entirety or in pertinent part, false petty cash vouchers which were not reimbursement but concealed payments, the use of corporate credit cards for

personal expenses and by preparing certain documents after the fact to mischaracterize and conceal prior misappropriation and diversion of corporate monies to their own use by ARC's executives. *Such actions distorted the picture of both the defendant corporation ARC's corporate finances and of the various executives' personal incomes. The result of these falsifications impaired the ability of the Internal Revenue Service to determine from the books and records the true amount and nature of the benefits and payments made to various corporate executives and share-holders and the nature of the corporation's own expenses.* [Emphasis added.]

This statement does not support petitioner's claim that petitioner was convicted only of conspiracy to commit tax evasion on the part of its executives and shareholders. Moreover, it is pure speculation by petitioner that Judge Palmieri was misled by Briccetti's statement. In addition, petitioner neglects to mention all the other statements which were in the Briccetti affidavit which may have convinced Judge Palmieri to disclose the grand jury testimony and documents.

At any rate, the criminal information was issued by a grand jury in the Southern District of New York. Judge Palmieri undoubtedly had access to the criminal information. We are not convinced that Judge Palmieri could easily have been misled and thus, see no reason to review his rule 6(e) order de novo.

As for petitioner's other assertion, we disagree that review by the Tax Court was its only available remedy after the rule 6(e) order was issued.

Respondent's counsel Mr. Flynn, Revenue Agent Perrotta, and petitioner's counsel held a discovery conference on October 9, 1986. At that conference, petitioner's counsel informed Flynn that petitioner did not have the burden of proof on fraud and that he would not provide him with any information relating to it.[2] Petitioner did, however, agree to allow respondent to review the books and records in its possession. Sometime between October 9, 1986, and October 22, 1986, respondent notified petitioner he would seek a rule 6(e) order.

On October 30, 1986, respondent formally requested the U.S. Attorney's Office to seek a rule 6(e) order. In this

---

[2]In fact, it appears clear to us petitioner did not have and could not have obtained the challenged grand jury materials, namely transcripts of grand jury testimony.

letter, respondent specifically alleged the reasons access to the information was necessary. Mr. Briccetti made the motion ex parte, which is permitted by rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure.

Judge Palmieri granted the Government's rule 6(e) motion on November 7, 1986. Respondent's counsel examined the grand jury materials on November 12, 1986, and days thereafter. Within a few days, respondent informed petitioner that the rule 6(e) order had been issued and that it could have access to any items which did not constitute attorney work product.

Petitioner was aware before its issuance that respondent intended to seek a rule 6(e) order. Petitioner chose not to object to the rule 6(e) order when it learned the order was granted shortly after November 12, 1986. At that point, petitioner could at least have asked the District Court which had granted the rule 6(e) order to vacate it. See *United States v. John Doe, Inc. I,* 481 U.S. 102, (1987). Instead, petitioner strategically decided to allow respondent to prepare his fraud case after having total access to the grand jury materials. Not until 1 week before this trial did petitioner move to suppress evidence (testimony) from those witnesses who testified before the grand jury and who would be called to testify at this trial.

The strategy did not pay off. We see no reason to review the District Court's order which was based upon the guidelines set forth in *Baggot* and *Sells.*

To reflect the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, COHEN, CLAPP, SWIFT, GERBER, WRIGHT, WILLIAMS, WELLS, WHALEN, and COLVIN, *JJ.,* agree with this opinion.

RUWE, *J.* did not participate in the consideration of this case.