JOSEPH R. DiLEO AND MARY A. DiLEO, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent DiLeo v. Commissioner
Docket Nos. 22366-86; 22367-86; 15778-87
United States Tax Court
T.C. Memo 1989-540; 1989 Tax Ct. Memo LEXIS 540; 58 T.C.M. (CCH) 304; T.C.M. (RIA) 89540; September 28, 1989; As corrected October 12, 1989 *540 Ps were targeted for grand jury investigation in 1980. In 1984 and 1985, Ps pleaded guilty to various counts of grand jury indictments. R's special agent, who assisted the Assistant United States Attorney in the grand jury proceedings and was on the 6(e) list, took the grand jury records to his office upon the conclusion of the grand jury proceedings. The special agent, prior to trial, segregated certain bank records from the remaining grand jury records. After district counsel obtained authorization to inspect various bank records from the respective banks, the special agent gave him the grand jury bank records. Held, the records in issue are not "matters occurring before the grand jury" within the meaning of Rule 6(e), Federal Rules of Criminal Procedure. United States v. Interstate Dress Carriers, 280 F.2d 52 (2d Cir. 1960), followed. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), applied. Held further, R is not judicially estopped from introducing the bank records at trial. Jared J. Scharf and Morton A. Smith, for the petitioners. Christopher B. Sterner, *541 for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: These consolidated cases are before us on petitioners' motion to suppress evidence on the grounds that respondent obtained certain grand jury materials in violation of Rule 6(e), Federal Rules of Criminal Procedure (Rule 6(e)). Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax -- I.R.C. Sections
Petitioners
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
Joseph R. and
1978
$ 5,068.00 $ 2,534.00
--    --  Mary A. DiLeo 1979
10,635.37  5,317.69  --    --  1980
10,303.75  5,151.87  --    --  1981
11,157.51  5,578.75  --    --  1982
12,209.45  6,104.72  50% of interest
--  due on $ 12,209.45
Walter E. and Michele
1978
4,681.00   2,340.50  --    --  A. Mycek, Jr. 1979
12,867.89  6,433.94  --    --  1980
11,405.99  5,703.00  --    --  1981
5,789.00   2,894.50  --    --  Arcelo Reproduction
1978
25,724.76  12,862.38 --    --  Company, Inc. 1979
21,959.47  10,979.74 --    --  1980
25,698.78  12,849.39 --    --  1981
21,663.52  10,831.76 --    --  1982
24,384.82  12,192.41 50% of interest
$ 6,096.21
due on $ 24,384.82
*542 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time they filed their petitions, all of the petitioners resided or had their principal place of business in New York. Petitioner Arcelo Reproduction Company (Arcelo) and petitioners Joseph R. and Mary A. DiLeo (DiLeos) and Walter E. and Michele A. Mycek, Jr. (Myceks) filed corporate or joint income tax returns, respectively, for the years in issue. During the years in issue, Arcelo was engaged in the printing and lithography business. Petitioners Joseph R. DiLeo (DiLeo) and Walter E. Mycek, Jr. (Mycek) were each 50-percent stockholders in Arcelo and its secretary/treasurer and president, respectively. DiLeo and Mycek were responsible for the day-to-day operations of Arcelo and the maintenance of its books and records. On the following dates, DiLeo and Mycek opened checking accounts in the name of Arcelo to serve as depositories for Arcelo's gross receipts: Date
Account Opened
Bank
Account No.
June 21, 1977
Chase Manhattan Bank (Chase)
408-1-018923
October 12, 1979
Citibank
1620-9247
August 17, 1981
Connecticut Bank and Trust Co.
1-66509-8
(CBT) (formerly known as State  National Bank of Connecticut)  December 14, 1982
Bank Mart (Mart) (formerly
699-876
known as Bank One)  *543 The deposits to the Chase, Citibank and CBT accounts were not included in the gross receipts reported by Arcelo on its income tax returns filed for the taxable years 1978 through 1982. During the taxable years 1978 through 1982, DiLeo received funds from the Chase, Citibank and CBT accounts in the form of checks made payable to him on those accounts. Similarly, Mycek received funds from the same accounts in the same manner during the taxable years 1978 through 1981. Neither the Myceks nor the DiLeos reported any of the funds received on their income tax returns filed for the years in issue. In October, 1980, a grand jury investigation was initiated in the United States District Court for the Southern District of New York which eventually considered possible criminal tax violations by DiLeo and Mycek. During the course of its investigation, the grand jury issued subpoenas duces tecum to Chase, Citibank and CBT. In response to these subpoenas, Chase, Citibank and CBT provided to the grand jury records which the respective banks maintained concerning their accounts. The subpoenaed records are marked exhibits 28-AB through 36-AJ. Special Agent Philip B. Kirschen (the special *544 agent) of the Internal Revenue Service's Criminal Investigation Division (CID) was assigned in October, 1980, to the grand jury investigation. The special agent fell within the Rule 6(e)(3)(A)(ii) description of "government personnel * * * deemed necessary * * * to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law," in this case Assistant United States Attorney Martin Perschetz, who was conducting the grand jury investigation. On or about March 28, 1984, Mycek was indicted by the grand jury. Count six of the indictment stated in pertinent part the following: 2. On various dates in 1978, WALTER E. MYCEK, JR., the defendant, withdrew for his personal use approximately $ 14,654.00, from account number 408-1-018923 in the name of Arcelo Reproduction Company, Inc. at Chase Manhattan Bank, Elmsford, New York. The defendant MYCEK unlawfully, wilfully and knowingly failed to report said $ 14,654.00 on the joint income tax return of himself and his wife for calendar year 1978. Count seven of the indictment stated in pertinent part the following: 2. On various dates in 1979, WALTER E. MYCEK, JR., the defendant, withdrew *545 for his personal use approximately $ 30,627.26, from account number 408-1-018923 in the name of Arcelo Reproduction Company, Inc. at Chase Manhattan Bank, Elmsford, New York. The defendant MYCEK unlawfully, wilfully and knowingly failed to report said $ 30,627.26 on the joint income tax return of himself and his wife for calendar year 1979. Count eight of the indictment stated in pertinent part the following: 2. On various dates in 1980, WALTER E. MYCEK, JR., the defendant, withdrew for his personal use approximately $ 29,980.00, from bank accounts in the name of Arcelo Reproduction Company, Inc., to wit, approximately $ 3,350.00 withdrawn from account number 408-1-018923 at Chase Manhattan Bank, Elmsford, New York, and approximately $ 26,630.00 withdrawn from account number 1620-9427 at Citibank, Elmsford, New York. The defendant MYCEK unlawfully, wilfully and knowingly failed to report said $ 29,980.00 on the joint income tax return of himself and his wife for calendar year 1980. Count nine of the indictment stated in pertinent part the following: 2. On various dates in 1981, WALTER E. MYCEK, JR., the defendant, withdrew for his personal use approximately $ 18,542.16, *546 from bank accounts in the name of Arcelo Reproduction Company, Inc., to wit, approximately $ 600.00 withdrawn from account number 408-1-018923 at Chase Manhattan Bank, Elmsford, New York, and approximately $ 17,942.16 withdrawn from account number 1620-9247 at Citibank, Elmsford, New York. The defendant MYCEK unlawfully, wilfully and knowingly failed to report said $ 18,542.16 on the joint income tax return of himself and his wife for calendar year 1981. On or about May 8, 1984, Mycek pleaded guilty to counts 1, 4 and 7 of the indictment and counts 2, 3, 5, 6, 8 and 9 were dismissed. On or about January 23, 1985, DiLeo was indicted by the grand jury. Count one of the indictment stated in pertinent part the following: 6. It was a further part of this conspiracy that the defendant JOSEPH R. DILEO and Walter E. Mycek, Jr. would and did deposit, from 1977 through 1982, a total of approximately $ 466,478.15 of Arcelo's business receipts into said Chase Manhattan, Citibank, State National Bank of Connecticut and Bank One accounts, keep these receipts and deposits secret and concealed from Arcelo's accountant and the Internal Revenue Service, and fail to report these receipts and *547 deposits as income on the corporate income tax returns of Arcelo. The amounts of these receipts and deposits for each of the years 1977 through 1982 were as follows: 1977
1978
1979
1980
Chase
$ 29,483.09
$ 78,147.52
$ 80,865.62
$ 7,992.17
Manhattan
1981
1982
$ 7,466.23
Citibank
1977
1978
1979
1980
$ 2,611.28
$ 94,841.18
1981
1982
$ 46,232.42
State National
1977
1978
1979
1980
Bank of
Connecticut
1981
1982
$ 27,595.96
$ 83,087.54
Bank One
1977
1978
1979
1980
1981
1982
$ 8,155.14
TOTALS
1977
1978
1979
1980
$ 29,483.09
$ 78,147.52
$ 83,476.90
$ 102,833.35
1981
1982
$ 81,294.61
$ 91,242.68
Count seven of the indictment stated in pertinent part the following: 2. On various dates in 1978, JOSEPH R. DILEO, the defendant, withdrew for his personal use approximately $ 14,745.00 from account number 408-1-018923 in the name of Arcelo Reproduction Company, Inc. at Chase Manhattan Bank, Elmsford, *548 New York. The defendant DILEO unlawfully, wilfully and knowingly failed to report said $ 14,745.00 on the joint income tax return of himself and his wife for calendar year 1978. Count eight of the indictment stated in pertinent part the following: 2. On various dates in 1979, JOSEPH R. DILEO, the defendant, withdrew for his personal use approximately $ 28,169.33 from account number 408-1-018923 in the name of Arcelo Reproduction Company, Inc. at Chase Manhattan Bank, Elmsford, New York. The defendant DILEO unlawfully, wilfully and knowingly failed to report said $ 28,169.33 on the joint income tax return of himself and his wife for calendar year 1979. Count nine of the indictment stated in pertinent part the following: 2. On various dates in 1980, JOSEPH R. DILEO, the defendant, withdrew for his personal use approximately $ 30,824.51 from bank accounts in the name of Arcelo Reproduction Company, Inc., to wit, approximately $ 2,000.00 withdrawn from account number 408-1-018923 at Chase Manhattan Bank, Elmsford, New York, and approximately $ 28,824.51 withdrawn from account number 1620-9247 at Citibank, Elmsford, New York. The defendant DILEO unlawfully, wilfully and knowingly *549 failed to report said $ 30,824.51 on the joint income tax return of himself and his wife for calendar year 1980. Count ten of the indictment stated in pertinent part the following: 2. On various dates in 1981, JOSEPH R. DILEO, the defendant, withdrew for his personal use approximately $ 29,125.00 from bank accounts in the name of Arcelo Reproduction Company, Inc., to wit, approximately $ 2,400.00 withdrawn from account number 408-1-018923 at Chase Manhattan Bank, Elmsford, New York, approximately $ 16,050.00 withdrawn from account number 1620-9247 at Citibank, Elmsford, New York, and approximately $ 10,675.00 withdrawn from account number 1-66509-8 at State National Bank of Connecticut, Greenwich, Connecticut. The defendant DILEO unlawfully, wilfully and knowingly failed to report said $ 29,125.00 on the joint income tax return of himself and his wife for calendar year 1981. Count eleven of the indictment stated in pertinent part the following: 2. On various dates in 1982, JOSEPH R. DILEO, the defendant, withdrew for his personal use approximately $ 30,740.00 from account number 1-66509-8 in the name of Arcelo Reproduction Company, Inc., at the State National Bank of Connecticut, *550 Greenwich, Connecticut. The defendant DILEO unlawfully, wilfully and knowingly failed to report said $ 30,740.00 on the joint income tax return of himself and his wife for calendar year 1982. On or about March 14, 1985, DiLeo pleaded guilty to counts 1, 4, 6, 9, 11 and 12 of the indictment and counts 2, 3, 5, 7, 8 and 10 were dismissed. After the Mycek and DiLeo criminal cases were closed in March, 1985, the special agent went to the United States Attorney's Office in One St. Andrews Plaza, New York City, placed all of the grand jury records in boxes and took them to his CID office in Newburgh, New York. Thereafter, the special agent sealed and labeled the grand jury records in several boxes. The special agent's CID group manager determined that the grand jury records should be sent to the Internal Revenue Service facility management area located in the basement of the Leo O'Brien Federal Building at Albany, New York. Sometime between July and September, 1985, the grand jury records were picked up by an Internal Revenue Service employee from Albany, New York, at the CID Newburgh office and transported to the Leo O'Brien Federal Building. The grand jury records were then placed *551 in the building's Internal Revenue Service facility management area. The grand jury records were stored in a room located in the back of the facility management area. The records were placed inside a cage within the room, and a key for the cage was maintained by the CID in Albany. On or about March 3, 1986, Revenue Agent David Prystal was assigned to examine the Myceks' and DiLeos' income tax returns for the years in issue. Revenue Agent Prystal was given the grand jury indictments of Mycek and DiLeo by his group manager to assist him in his preparation of revenue agent reports. Revenue Agent Prystal closed his examination of the Myceks' and DiLeos' returns on March 14, 1986. Respondent issued statutory notices of deficiency to the Myceks and DiLeos on March 26, 1986. Attached to each statutory notice was a statement of income tax changes (Form 5278) which listed the following adjustments to income under the heading "Constructive Dividend:" Petitioners
Year
Amount
Walter E. and Michele A. Mycek, Jr.
1978
$ 14,654
1979
30,627
1980
29,980
1981
18,542
Joseph R. and Mary A. DiLeo
1978
14,745
1979
28,169
1980
30,825
1981
29,125
1982
30,740
*552 These amounts equalled those in the indictments described previously. On June 23, 1986, the Myceks and DiLeos timely filed their respective petitions. On December 7, 1986, Revenue Agent Prystal was assigned to examine Arcelo's income tax returns for the years in issue. Revenue Agent Prystal used the Mycek and DiLeo grand jury indictments to assist him in his preparation of a revenue agent report. He closed his examination of Arcelo's returns on February 26, 1987. Respondent issued two notices of deficiency to Arcelo on March 6, 1987. The first notice covered 1980, and the second notice covered 1978, 1979, 1981 and 1982. Attached to each statutory notice was a statement of income tax changes (Form 5278) which listed the following adjustments to income under the heading "Gross Receipts:" Year
Amount
1978
$ 78,147.52 1979
83,476.90
1980
102,833.35
1981
81,294.61
1982
91,242.68
These amounts exactly equalled those in paragraph 6, count one of the DiLeo indictment described previously. On June 3, 1987, Arcelo timely filed its petition. The reports prepared by Revenue Agent Prystal were used as the basis for preparing the statutory notices. *553 On August 5, 1987, Revenue Agent Prystal was assigned to assist respondent's counsel, Christopher B. Sterner (district counsel), in preparation of these cases for trial. On August 11, 1987, the Mycek and DiLeo cases, docket Nos. 22367-86 and 22366-86, respectively, were set for trial at the trial session beginning on January 11, 1988, at New York City. On December 2, 1987, Revenue Agent Daniel Sickles was assigned to assist district counsel in his preparation of these cases for trial. On December 7, 1987, Revenue Agent Sickles served subpoenas duces tecum on Chase and Citibank which required them to produce all books, records or other documents for the years 1977-1983 pertaining to the Chase and Citibank accounts, respectively, at the call of calendar on January 11, 1988. On December 8, 1987, Revenue Agent Sickles served a subpoena duces tecum on CBT which required it to produce all books, records or other documents for the years 1977-1983 pertaining to the CBT account at the call of calendar on January 11, 1988. On December 10, 1987, Revenue Agent Sickles reviewed respondent's administrative files concerning these cases and observed that they contained no records maintained *554 by Chase, Citibank or CBT with respect to the Chase, Citibank or CBT accounts, respectively. On December 20, 1987, district counsel requested that the special agent come from Newburgh to the O'Brien Federal Building in Albany to remove the grand jury records from the CID storage cage in the building's basement. On December 22, 1987, the special agent went to the O'Brien Federal Building, removed all of the sealed boxes containing the grand jury records from the basement storage cage and took them upstairs to the CID office on the fifth floor. The special agent opened all of the boxes and removed the Chase, Citibank and CBT records that district counsel had requested. The special agent removed the bank records from the binders in which he had placed them for grand jury purposes, and pulled the bank microfilm records off of their grand jury exhibit backings, which had been in the binders. Next, he inventoried the bank microfilm records and placed all of the records in one separate box and closed the box. Those remaining grand jury records which district counsel had not requested were resealed in their original boxes and given to a CID tax fraud investigative aide who returned them *555 to the basement storage cage. The special agent gave the box containing the Chase, Citibank and CBT records to a secretary in CID and instructed her that district counsel or someone from his office would call for the box. The special agent provided district counsel with an inventory list of the records which the box contained. On December 23, 1987, district counsel received a letter, via Federal Express, dated December 21, 1987, from CBT in response to the subpoena duces tecum, which authorized respondent to review the records it had previously provided to the grand jury in lieu of reproducing these documents a second time. On December 24, 1987, district counsel received a letter dated December 21, 1987, from Citibank in response to the subpoena duces tecum authorizing respondent to obtain the records it had previously provided to the grand jury. On December 28, 1987, district counsel gave Revenue Agent Sickles the CBT and Citibank records. Revenue Agent Sickles, with the assistance of a paralegal, analyzed the records relative to deposits and withdrawals and prepared summaries between December 28, 1987, and January 6, 1988. On January 5, 1988, district counsel received a *556 letter dated January 4, 1988, via Airborne, from Chase in response to the subpoena duces tecum authorizing respondent to obtain the records which it had previously provided to the grand jury. On January 5, 1988, Revenue Agent Sickles went to the CID office in the O'Brien Federal Building and obtained the Chase records. With the assistance of the paralegal, Revenue Agent Sickles analyzed the Chase records and prepared a summary of deposits and withdrawals by January 6, 1988. OPINION Petitioners move in these cases to suppress certain evidence which they claim was obtained in violation of Rule 6(e), Federal Rules of Criminal Procedure. The issues we must decide are (1) whether the Chase, Citibank and CBT records (exhibits 28AB through 36-AJ) that were submitted to the grand jury and later provided to respondent are "matters occurring before the grand jury," the disclosure of which is prohibited without a valid court order under Rule 6(e); and (2) if so, whether valid authorization allowing respondent to use the records was obtained prior to the examination of such records. Rule 6(e)codifies *557 the traditional rule of secrecy of grand jury proceedings and provides in relevant part: (e) Recording and Disclosure of Proceedings: * * * (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court. (3) Exceptions. (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to -- (i) an attorney for the government for use in the performance of such attorney's duty; and (ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's *558 duty to enforce federal criminal law. * * * (The foregoing provisions of Rule 6(e) have not, as of the date of this Opinion, been revised since the Supreme Court decided United States v. Baggot, 463 U.S. 476 (1983), and United States v. Sells Engineering, Inc., 463 U.S. 418 (1983), nor since the taxable years in issue.) Respondent concedes that, aside from the participation of the special agent in the grand jury proceedings, none of the exceptions to the general rule of secrecy found in Rule 6(e)(3) are applicable. However, respondent contends that the Chase, Citibank and CBT records are not "matters occurring before the grand jury." If they are not, then Rule 6(e) is inapplicable, and respondent did not need a court order to inspect or use them. Petitioners assert that the bank records constitute "matters occurring before the grand jury." Petitioners thus contend that respondent's use of these records without obtaining a 6(e) order violates Rule 6(e). We agree with respondent. Preliminarily, we note that petitioners concede that the revenue agent did not use either the Chase, Citibank or CBT records in his preparation of the reports *559 which provided the basis for the statutory notices. See United States v. Baggot, supra. The record fully supports petitioners' concession. The DiLeo and Mycek indictments are public records and were used by Revenue Agent Prystal in preparing his reports, as evidenced by the fact that the exact amounts listed in the statements of income tax changes (Forms 5278) as constructive dividends or gross receipts, which provided the basis for the DiLeo, Mycek and Arcelo statutory notices, are to be found in the indictments. Furthermore, on the basis of the testimony of the special agent and Revenue Agent Prystal, which we found credible, and the fact that Prystal's reports exactly track material contained in the indictments, we conclude that Revenue Agent Prystal did not have access to nor did he use the grand jury records stored in the Leo O'Brien Federal Building. See Berkery v. Commissioner, 91 T.C. 179 (1988), affd. 872 F.2d 411 (3d Cir. 1989). Now we turn to the issue of whether the bank records constitute "matters occurring before the grand jury" as contemplated by Rule 6(e). The Second Circuit addressed comprehensively the requirements *560 of Rule 6(e) in United States v. Interstate Dress Carriers, Inc., 280 F.2d 52 (2d Cir. 1960). Since appeal in the instant case lies in the Second Circuit, we are required by Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to follow the law of the case of Interstate Dress Carriers. Petitioners assert that we should not follow Interstate Dress Carriers because (1) Interstate Dress Carriers predates and was implicitly overruled by the Supreme Court's decisions in United States v. Sells Engineering, Inc., supra, and United States v. Baggot, supra; and (2) subsequent circuit court opinions, applying Baggot and Sells, question the reasoning of Interstate Dress Carriers, and therefore "it appears reasonable to forecast that the Second Circuit may overrule its decision therein." We are not persuaded by petitioners' contentions. First, it is true that Interstate Dress Carriers predates Baggot and Sells by 23 years. However, those decisions do not overrule Interstate Dress Carriers, nor do they criticize its reasoning. In United States v. Baggot, supra at 477, *561 the Supreme Court held that a civil tax audit is not "preliminar[y] to or in connection with a judicial proceeding" within the meaning of Rule 6(e)(3)(C)(i). In Sells the Court held that Rule 6(e) was not intended to grant free access to grand jury materials to attorneys other than those involved in the criminal investigation to which the grand jury materials pertained. In each instance, the Court was not presented with the issue of what constitutes "matters occurring before the grand jury" under Rule 6(e). See In re Grand Jury Proceedings, 851 F.2d 860, 865 (6th Cir. 1988). Petitioners' assertion that Baggot and Sells implicitly overruled Interstate Dress Carriers is thus unfounded. Second, we recognize that petitioners are correct in asserting that, post-Baggot and Sells, the Second Circuit's reasoning in Interstate Dress Carriers has not uniformly been followed by other circuit courts of appeal. See In re Grand Jury Proceedings, supra at 863-865 (3d, 6th, 7th and D.C. Circuits following different standards). However, we are not persuaded that the Second Circuit would overrule the case if presented the issue. *562 This Court has in the past on occasion distinguished precedent of a given circuit court to which appeal would lie if the development of the law since the rendering of the circuit court's opinion strongly indicates that the opinion is "stale" and no longer likely to be followed as precedent. See, e.g., Kent v. Commissioner, 61 T.C. 133 (1973). In the instant case, Interstate Dress Carriers has not been expressly and unequivocally overruled by the Second Circuit. Most significantly, the Second Circuit itself has chosen not to overrule Interstate Dress Carriers, and appears rather to have given it tacit affirmation. See, e.g., H.L. Hayden Co. of New York, Inc. v. Siemens Medical, 797 F.2d 85, 88 (2d Cir. 1986); United States v. Lartey, 716 F.2d 955, 964 (2d Cir. 1983); United States v. Weinstein, 511 F.2d 622, 627 n.5 (2d Cir. 1975). Accordingly, in this case we shall follow and apply the Second Circuit's opinion in Interstate Dress Carriers, under the rule of Golsen, supra.
Interstate Dress Carriers, Inc., supra at 53, establishes that *563 "matters occurring before the grand jury" cannot be disclosed without a 6(e) order. Grand jury records which are found not to be "matters occurring before the grand jury" may be inspected by persons other than the grand jury and the prosecuting attorneys with either "the consent of the [grand jury records'] owner or upon a court order." United States v. Interstate Dress Carriers, Inc., supra at 54. When examining whether or not grand jury records constitute "matters occurring before the grand jury," the Second Circuit stated: Thus, when testimony or data is sought for its own sake -- for its intrinsic value in the furtherance of a lawful investigation -- rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury. [United States v. Interstate Dress Carriers, Inc., supra at 54.] In the instant case, we find *564 that the Chase, Citibank and CBT records were sought by respondent for their intrinsic value and not to learn what took place before the grand jury. The records reflect the deposits and withdrawals which DiLeo and Mycek made with respect to the accounts at each financial institution, and nothing further. Thus, under the standard enunciated in Interstate Dress Carriers, the records in dispute are not matters occurring before the grand jury. The second prong of our inquiry, as directed by the Second Circuit's approach, is whether respondent had either the consent of Chase, Citibank and CBT or a court order authorizing his inspection of the bank records. Interstate Dress Carriers, supra. Respondent did not have a court order, nor did he attempt to obtain one. However, Chase, Citibank and CBT gave respondent consent to inspect their respective bank records. Respondent served the banks with subpoenas duces tecum and received letters authorizing use of the records prior to Revenue Agent Sickle's analysis of the records. Petitioners contend that a violation of Rule 6(e) occurred when the special agent left the box containing the bank records with the CID secretary, before *565 district counsel obtained the letters of authorization from the banks. The special agent's actions did not violate Rule 6(e). The secretary's brief possession of the box was purely ministerial in nature, and petitioners have failed to present any evidence that her possession of the box violated the principle of grand jury secrecy. United States v. Lartey, supra.We find respondent's actions to be in accord with the guidelines established by the Second Circuit. Petitioners further assert that respondent should be judicially estopped from contending that the Chase, Citibank and CBT records are not "matters occurring before the grand jury" because respondent informed petitioners, in response to a discovery request, that other nonparty grand jury records were "matters occurring before the grand jury" which respondent could not obtain. We do not agree. The Court may apply the doctrine of judicial estoppel (also known as the duty of consistency) where it is deemed appropriate to prevent a party "from taking a position inconsistent with one successfully and unequivocally *566 asserted by the same party in a prior proceeding." Reynolds v. Commissioner, 861 F.2d 469, 472 (6th Cir. 1988), revg. T.C. Memo. 1987-261; Arkansas Best Corp. v. Commissioner, 83 T.C. 640, 658-660 (1984), revd. on another issue 800 F.2d 215 (8th Cir. 1986), affd. 485 U.S. 212 (1988). Respondent is not taking inconsistent positions in two or more proceedings. Therefore, the doctrine of judicial estoppel is not appropriate in the instant case. Petitioners contend that the only available copies of certain records essential to their cases are contained in the sealed boxes of grand jury records. Petitioners allege that respondent is using Rule 6(e) as a "sword and a shield" to prevent petitioners from substantiating deductible expenses. DiLeo and Mycek filed their petitions on June 23, 1986. Arcelo filed its petition on June 3, 1987, and the Mycek and DiLeo cases were set for trial on August 11, 1987. DiLeo and Mycek, both 50-percent stockholders of Arcelo, had adequate opportunity to file an ex parte 6(e) motion in the United States District Court for the Southern District of New York demonstrating " particularized *567 need" for the grand jury records under Baggot and Sells. See Kluger v. Commissioner, 91 T.C. 969, 977-979 (1988); Arc Electrical Construction Co. v. Commissioner, 91 T.C. 947, 954 (1988); Bell v. Commissioner, 90 T.C. 878, 908 (1988). Accordingly, we refrain from applying judicial estoppel in the instant case. An order will be issued denying petitioners' motion to suppress evidence on the grounds that respondent obtained grand jury materials in violation of Rule 6(e). An appropriate order will be issued. Footnotes
1. Cases of the following petitioners have been consolidated herewith: Walter E. Mycek, Jr. and Michele A. Mycek, docket No. 22367-86; and Arcelo Reproduction Company, Inc., docket No. 15778-87.↩