NlMS, Chief Judge: Respondent determined the following deficiencies in and additions to petitioners’ Federal income tax: Additions to tax Sec. Sec. Sec. See. Petitioners Year Deficiency 6653(b) 6653(b)(1) 6653(b)(2) 6661 Joseph R. 1978 $5,068.00 $2,534.00 and Mary 1979 10,635.37 5,317.69 A. DiLeo 1980 10,303.75 5,151.87 1981 11,157.51 5,578.75 1982 12,209.45 $6,104.72 Walter E. and 1978 4,681.00 2.340.50 Michele A. 1979 12,867.89 6,433.94 Mycek, Jr. 1980 11,405.99 5,703.00 1981 5,789.00 2.894.50 Additions to tax Sec. Sec. Sec. Sec. Petitioners Year Deficiency 6658(b) 6658(b)(1) 6658(b)(2) 6661 Arcelo 1978 25,724.76 12.862.38 Reproduction 1979 21,959.47 10,979.74 Co., Inc. 1980 25,698.78 12.849.39 1981 21,663.52 10,831.76 1982 24,384.82 12,192.41 2$6,096.21 1 50 percent of interest due on $12,209.45 2 50 percent of interest due on $24,384.82 (Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.) The issues for decision are whether (1) petitioners understated their income tax in the amounts determined by respondent in his notices of deficiency for the years in issue; (2) petitioners are liable for additions to tax for fraud under section 6653(b) for the years in issue; (3) Arcelo Reproduction Co., Inc., is liable for an addition to tax under section 6661 for 1982; (4) respondent is barred from assessing the income tax due from petitioners by the statute of limitations for the years in issue; (5) Michele Mycek and Mary DiLeo are entitled to relief from any liability for tax as innocent spouses under section 6013(e) for the years in issue; and (6) respondent’s use of a person who participated in the grand jury investigation to assist him in this civil case was a violation of rule 6(e), Federal Rules of Criminal Procedure, or gave respondent an unfair discovery advantage. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner Arcelo Reproduction Co., Inc. (Arcelo), is a corporation with its sole place pf business at 7 North Lawn Avenue, Elmsford, New York. Petitioners Walter E. Mycek, Jr., and Michele A. Mycek (Myceks) are married individuals with legal residence at 34 Green Valley Road, Armonk, New York. Petitioners Joseph R. DiLeo and Mary A. DiLeo (DiLeos) are married individuals with legal residence at 55 Park Circle, White Plains, New York. Arcelo filed corporate income tax returns (Forms 1120) with respondent for the taxable years 1978, 1979, 1980, 1981, and 1982. The Myceks filed joint individual income tax returns (Forms 1040) with respondent for the taxable years 1978, 1979, 1980, and 1981. The DiLeos filed joint individual income tax returns (Forms 1040) with respondent for the taxable years 1978, 1979, 1980, 1981, and 1982. From 1978 through 1982, Arcelo was engaged in the business of printing and lithography. From 1978 through 1982, petitioner Walter E. Mycek, Jr. (Mycek) was the president of Arcelo and owner of 50 percent of its stock. From 1978 through 1982, petitioner Joseph R. DiLeo (DiLeo) was the secretary/treasurer of Arcelo and owner of 50 percent of its stock. Mycek and DiLeo were responsible for the day-to-day operations of Arcelo and the maintenance of its books and records concerning income it received and expenses it paid. On or about June 21, 1977, Mycek and DiLeo opened checking account number 408-1-018923 in the name of Arcelo at the Chase Manhattan Bank (Chase account) which served as a depository for a portion of Arcelo’s gross receipts. On or about October 12, 1979, Mycek and DiLeo opened checking account number 1620-9247 in the name of Arcelo at Citibank (Citibank account) which served as a depository for a portion of Arcelo’s gross receipts. On or about August 17, 1981, Mycek and DiLeo opened checking account number 1-65509-8 in the name of Arcelo at the Connecticut Bank & Trust Co. (CBT account which served as a depository for a portion of Arcelo’s gross receipts. On or about December 14, 1982, Mycek and DiLeo opened checking account number 699-876 in the name of Arcelo at Bank Mart (Mart account) which served as a depository for a portion of Arcelo’s gross receipts. (Hereinafter, the Chase, Citibank, CBT, and Mart accounts will be collectively referred to as the secret bank accounts.) From 1978 through 1982, Mycek and DiLeo deposited the following amounts of Arcelo’s gross receipts into the Chase, Citibank, CBT, and Mart accounts: Deposits 1978 1979 1980 1981 1982 Chase $78,147.32 $80,865.62 $7,992.17 $7,466.23 Citibank --- 2,581.28 94,841.18 46,232.42 CBT --- --- --- 30,253.31 $81,448.39 Mart — — — — 5,458.00 Total 78,147.32 83,446.90 102,833.35 83,951.96 86,906.39 None of the deposits which were made to the secret bank accounts were included in the gross receipts which were reported by Arcelo on its corporate Federal income tax returns. From 1978 through 1981, Mycek received certain funds from the Chase, Citibank, and CBT accounts by his receipt and negotiation of checks made payable to him on said accounts. The Myceks did not report any of the funds received from the Chase, Citibank, and CBT accounts on their Federal income tax returns. The Myceks received the following amounts from the Chase, Citibank, and CBT accounts: Checks drawn 1978 1979 1980 1981 Chase $14,204 $29,777.26 $3,200 $600.00 Citibank 22,380 15.102.16 CBT 9,534.00 Total 14,204 29,777.26 25,580 25.236.16 From 1978 through 1982, DiLeo received certain funds from the Chase, Citibank, and CBT accounts by his receipt and negotiation of checks made payable to him on said accounts. The DiLeos did not report any of the funds received by DiLeo from the Chase, Citibank, and CBT accounts on their Federal income tax returns. The DiLeos received the following amounts from the Chase, Citibank, and CBT accounts: Checks drawn 1978 1979 1980 1981 1982 Chase $14,880.69 $28,444.33 $2,000.00 $2,400 Citibank 28,824.51 16,050 CBT 10,675 $30,640 Total 14,880.69 28,444.33 30,824.51 29,125 30,640 From 1978 through 1982, checks made payable to cash and negotiated were drawn on the Chase, Citibank, and CBT accounts. The checks made payable to cash were drawn on the Chase, Citibank, and CBT accounts in the following amounts: Checks drawn 1978 1979 1980 1981 1982 Chase $2,868 $3,112 $250.00 $950 Citibank - - - - - - 7,555.30 5,372 - - - CBT - - - - - - - - - 2,750 $2,200 Total 2,868 3,112 7,805.30 9,072 2,200 (During 1978, 1979, 1980, and 1981, checks in the amounts of $650, $950, $150, and $240, respectively, made payable to cash were drawn on the Chase and Citibank accounts and negotiated by Mycek.) Mycek and DiLeo failed to inform the accountant who prepared Arcelo’s income tax returns of the existence of the secret bank accounts. Petitioners do not currently possess or have control of any books, records, or other documents reflecting transactions made with respect to the secret bank accounts during the taxable years. 1978 through 1982. On its corporate Federal income tax returns, Arcelo reported taxable income, Federal income tax liability, nondeductible insurance premium, and dividends received deduction for each year in issue in the following amounts: Year Taxable income Federal income tax Nondeductible insurance premium Dividends received deduction 1978 $6,121.25 $1,224.25 $2,412.45 $463.25 1979 7,907.46 1,384.27 .- 1,332.74 161.93 1980 1,432.45. 1981 5,989.20 1,526.47 1982 4,807.79 301.21 2,638.89 On or about March 28, 1984, Mycek was indicted by a grand jury on the following charges: a. One count of conspiracy to defraud the United States by conspiring with DiLeo to impede, impair, obstruct and defeat the respondent’s ability to determine the true income tax liability of Arcelo for the taxable years 1977 through 1982 in violation of 18 U.S.C. sec. 371; b. One count of aiding and assisting in the preparation of Arcelo’s false corporate income tax return for the 1978 taxable year in violation of I.R.C. sec. 7206(2); c. Three counts of knowingly subscribing Arcelo’s 1979, 1980 and 1981, respectively, corporate income tax returns which he knew were false as to material matters in violation of I.R.C. sec. 7206(1); and d. Four counts of willfully and knowingly attempting to evade and defeat a large part of his and his wife’s joint income tax liability for the taxable years 1978, 1979, 1980 and 1981, respectively, by filing false and fraudulent income tax returns on behalf of himself and his wife in violation of I.R.C. sec. 7201. On or about May 8, 1984, Mycek pled guilty to the following charges in satisfaction of the subject indictment: a. One count of conspiracy to defraud the United States by conspiring with DiLeo to impede, impair, obstruct and defeat the respondent’s ability to determine the true income tax liability of Arcelo for the taxable years 1977 through 1982 in violation of 18 U.S.C. sec. 371; b. One count of knowingly subscribing Arcelo’s 1980 corporate income tax return which he knew was false as to material matters in violation of I.R.C. sec. 7206(1); and c. One count of willfully and knowingly attempting to evade and defeat a large part of his and his wife’s joint income tax liability for the taxable year 1979 by filing a false and fraudulent income tax return on behalf of himself and his wife in violation of I.R.C. sec. 7201. On or about July 9, 1984, the U.S. District Court for the Southern District of New York entered a judgment of conviction against Mycek incorporating the charges to which he had pled guilty and sentenced him to serve a term of imprisonment for 1 year and a day. On or about January 23, 1985, DiLeo was indicted by a grand jury on the following charges: a. One count of conspiracy to defraud the United States by conspiring with Mycek to impede, impair, obstruct and defeat the respondent’s ability to determine the true income tax liability of Arcelo for the taxable years 1977 through 1982 in violation of 18 U.S.C. sec. 371; b. Three counts of aiding and assisting in the preparation of Arcelo’s false corporate income tax returns for the 1979, 1980 and 1981 taxable years, respectively, in violation of I.R.C. sec. 7206(2); c. Two counts of knowingly subscribing Arcelo’s 1978 and 1982, respectively, corporate income tax returns which he knew were false as to material matters in violation of I.R.C. sec. 7206(1); and d. Five counts of willfully and knowingly attempting to evade and defeat a large part of his and his wife’s joint income tax liability for the taxable years 1978, 1979, 1980, 1981 and 1982, respectively, by filing false and fraudulent income tax returns on behalf of himself and his wife in violation of I.R.C. sec. 7201; and e. One count of presenting a false sworn statement to the respondent in violation of 18 U.S.C. sec. 1001. On or about March 14, 1985, DiLeo pled guilty to the following charges in satisfaction of the subject indictment: a. One count of conspiracy to defraud the United States by conspiring with Mycek to impede, impair, obstruct and defeat the respondent’s ability to determine the true income tax liability of Arcelo for the taxable years 1977 through 1982 in violation of 18 U.S.C. sec. 371; b. One count of knowingly subscribing Arcelo’s 1982 corporate income tax return which he knew was false as to material matters in violation of I.R.C. sec. 7206(1); c. Two counts of willfully and knowingly attempting to evade and defeat a large part of his and his wife’s joint income tax liability for the taxable years 1980 and 1982, respectively, by filing false and fraudulent income tax returns on behalf of himself and his wife in violation of I.R.C. sec. 7201; d. One count of aiding and assisting in the preparation of Arcelo’s false corporate income tax return for the 1980 taxable year in violation of I.R.C. sec. 7206(2); and e. One count of presenting a false sworn affidavit to the respondent in violation of I.R.C. sec. 1001. On or about June 17, 1985, the U.S. District Court for the Southern District of New York entered a judgment of conviction against DiLeo incorporating the charges to which he had pled guilty and sentenced him to serve a term of imprisonment for 1 year and a day and pay a fine in the amount of $7,500. The following findings, while they involve mixed questions of fact and law, are derived from the stipulations of the parties. The statute of limitations does not bar assessment and collection of the deficiency in income tax due from Arcelo for the taxable year 1982. The statute of limitations does not bar assessment and collection of the deficiencies in income tax due from Mycek and DiLeo for the taxable years 1979, 1980, and 1981 if the 6-year period for assessment applies under section 6501(e)(1)(A). The Myceks reported gross income in the amounts of $42,911, $38,047, and $44,204 on their income tax returns for the taxable years 1979, 1980, and 1981, respectively. For purposes of computing the gross income of the Myceks within the meaning of section 6501(e)(1), said gross income does not reflect net capital gain and does not reflect the capital gain deduction per line 14 of the 1979 return, but said gross income does reflect all capital gains, i.e., $8,067, reported on Schedule D of the 1979 return. The Myceks are entitled to claim interest expense deductions for the taxable years 1980 and 1981 in the amounts of $2,584 and $5,266, respectively, in addition to those interest expense deductions claimed on the income tax returns filed with respondent for the taxable years 1980 and 1981. Moreover, for purposes of computing reported gross income of the Myceks under section 6501(e)(1), gross income does not reflect net partnership income, but rather said gross income does reflect distributive shares of partnership gross income in the amounts of $2,100, $4,800, and $4,925 for the taxable years 1979, 1980, and 1981, respectively. The DiLeos reported gross income in the amounts of $37,808, $38,454, and $41,418 on their income tax returns for the taxable years 1979, 1980, and 1981, respectively. For purposes of computing gross income of the DiLeos under section 6501(e)(1), said gross income reflects a liquidating dividend in the amount of $3,062 for the taxable year 1979, total wages in the amount of $26,950 for the taxable year 1980, and distributive shares of partnership gross income in the amounts of $2,100, $4,800, and $4,925 for the taxable years 1979, 1980, and 1981, respectively. In his notices of deficiency, respondent determined that the Myceks and DiLeos understated their dividend income and Arcelo understated its gross receipts as follows: Petitioners Year Gross receipts Dividend income Joseph R. and 1978 $14,745 Mary A. DiLeo 1979 28,169 1980 30,825 1981 29,125 1982 30,740 Walter E. and Michele 1978 14,654 A. Mycek, Jr. . 1979 30,627 1980 29,980 1981 18,542 Arcelo Reproduction 1978 $78,147.52 Co., Inc. 1979 83,476.90 1980 102,833.35 1981 81,294.61 1982 91,242.68 Respondent further determined that (1) Arcelo, Mycek, and DiLeo were liable for additions to tax for fraud under section 6653(b) for the years in issue; and (2) Arcelo was liable for the addition to tax under section 6661 for 1982. OPINION Arcelo’s Deficiencies Respondent asserts that Arcelo understated the taxable income required to be shown on its income tax returns for 1978, 1979, 1980, 1981, and 1982 in the amounts of $78,147.52, $83,476.90, $102,833.35, $81,294.61, and $91,242.68, respectively. Petitioners contend that Arcelo did not understate its income in the amounts indicated. Section 61(a) defines gross income as “all income from whatever source derived,” including gross income derived from business. Every person hable for any tax must maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Respondent asserts that he “was forced to determine the gross income which Arcelo derived from its business activity” under the bank deposits method because Arcelo faded to maintain adequate books and records and “submit such records to respondent in connection with his examination of Arcelo’s income tax returns.” The use of the bank deposits method for computing income has long been sanctioned by the courts. Estate of Mason v. Commissioner, supra at 656. When a taxpayer keeps no books or records and has large bank deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposits method for computing income. Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner, supra at 657. From 1978 through 1982, Arcelo was engaged in the business of printing and lithography. During that time, Mycek and DiLeo each owned 50 percent of Arcelo’s stock and served as its president and secretary/treasurer, respectively. From 1978 through 1982, Mycek and DiLeo deposited a portion of Arcelo’s gross receipts into the secret bank accounts (supra at 861-862) and did not report the receipts on the income tax return filed by Arcelo for each of those years. Petitioners did not maintain any books or records reflecting the transactions made with respect to the secret bank accounts. Under these circumstances, respondent may determine Arcelo’s gross income by using the bank deposits method. Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656; see also Hague Estate v. Commissioner, supra at 777-778. The bank deposits method assumes that all money deposited in a taxpayer’s bank account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). Of course, when the bank deposits method is employed, “the Government must take into account any non-taxable source or deductible expense of which it has knowledge.” Price v. United States, supra at 677. Respondent submitted into evidence copies of bank records disclosing all deposits to and disbursements from the secret bank accounts during the years in issue. Respondent analyzed the bank records and prepared schedules which summarized all of the transactions, deposits, and disbursements occurring in the accounts during the years in issue. Respondent identified any deposits which represented nontaxable income or were previously reported business receipts of Arcelo. Consequently, respondent has properly reconstructed Arcelo’s gross income under the bank deposits method. The amount of Arcelo’s gross receipts deposited into the secret bank accounts varies slightly from the unreported gross income set forth in the notices of deficiency issued to Arcelo. Specifically, the amount deposited into the secret bank accounts differs from the amount on the notices of deficiency by 3.2 percent and 4.7 percent for 1981 and 1982, respectively. The fact that the Commissioner was not completely correct does not invalidate the method employed. Marcello v. Commissioner, 380 F.2d 494 (5th Cir. 1967), affg. in part and revg. in part T.C. Memo. 1964-302; Halle v. Commissioner, 175 F.2d 500, 503 (2d Cir. 1949), affg. 7 T.C. 245 (1946). Petitioners, however, contend that respondent’s bank deposits analysis “fails to comply with applicable legal requirements.” Specifically, petitioners claim that a proper bank deposit proof requires the Government (1) to investí-gate for and eliminate transfers and deposits and other nontaxable income; (2) to show through analysis that the deposits were regular and periodic and have the appearance of income; (3) to prove that the taxpayer conducted a regular business activity and that the business activity is capable of generating gross receipts to the extent shown by the bank deposits; and (4) to prove that the Government checked leads which were reasonably susceptible of being verified. Petitioners cite United States v. Slutsky, 487 F.2d 832 (2d Cir. 1973), in support of their contention that respondent did not submit “proper bank deposits proof.” In Slutsky, the taxpayers appealed criminal tax evasion convictions on the ground that the evidence adduced by the Government under the bank deposits method of proof was insufficient to support the convictions. In United States v. Slutsky, supra at 840-841, the Second Circuit held that when the bank deposits method is employed, the Government’s burden of proof included showing that the prosecution did not disregard explanations by the defendant reasonably susceptible of being checked. Petitioners’ reliance on the Slutsky case to show that respondent’s bank deposits analysis was defective is misplaced. As the U.S. Court of Appeals for the Fifth Circuit has held, “Since this is a civil action by the Government to recover a deficiency, the cases involving criminal prosecutions for tax evasion are not apposite because of the greater burden of proof imposed upon the Government in that class of cases.” Price v. United States, supra at 677. Respondent’s determination of income tax deficiencies is presumed correct. Halle v. Commissioner, supra at 502. Thus, petitioners, not the Government, bear the burden of proving that respondent’s determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Petitioners, however, assert that the burden of going forward with the evidence should be shifted to respondent because respondent did not give petitioners access to grand jury records needed to disprove a part of the deficiency while respondent used grand jury records to establish the deficiency. In support of their assertion, petitioners cite, among other cases, Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980); and Jackson v. Commissioner, 73 T.C. 394 (1979). In Llórente and Jackson, respondent reconstructed the taxpayer’s income without any evidence in the record showing that the taxpayer had actually received anything during the period in issue. In Llórente v. Commissioner, supra at 156, the Second Circuit held that respondent’s determination was “arbitrary and without rational foundation” because the evidence in the record did not link the taxpayer to “some tax-generating acts.” Similarly, in Jackson v. Commissioner, supra at 403, we held that respondent’s determination was “arbitrary and excessive” because it was based solely “on a secondhand report of peripheral statements made by an unreliable informant” who did not even link the taxpayer with either money or drugs. In both of these so-called drug related cases, the burden of going forward was no longer on the taxpayer because respondent’s determination was found to be “arbitrary and excessive.” See United States v. Janis, 428 U.S. 433 (1976); see also Helvering v. Taylor, 293 U.S. 507 (1935). Petitioners do not contend that the burden of going forward should be shifted to respondent because he did not link Arcelo to a tax-generating activity. Instead, petitioners contend that the burden of going forward should be shifted to respondent because “The hallmark features present in the cases that shift to the respondent the burden of proving the deficiency is unfairness and arbitrariness” and “respondent acted unfairly and arbitrarily.” Petitioners allege the following facts in support of their contention that respondent acted unfairly and arbitrarily. Petitioners claim that respondent had possession of certain grand jury records. Petitioners further claim that when they requested disclosure of certain grand jury records, which included bank records, respondent refused on the ground that such records were secret under the provisions of rule 6(e), Federal Rules of Criminal Procedure (rule 6(e)). Petitioners, however, claim that “on the eve of trial, respondent used grand jury records — which also were bank accounts — to prove its case.” Petitioners’ assertion that the burden of going forward should be shifted to respondent due to “unfairness” is a veiled attempt to relitigate an issue previously ruled on in DiLeo v. Commissioner, T.C. Memo. 1989-540. In DiLeo v. Commissioner, T.C. Memo. 1989-540, 58 T.C.M. 304, 310, 50 P-H Memo T.C. par. 89,540 at 2706, we stated: Petitioners contend that the only available copies of certain records essential to their cases are contained in the sealed boxes of grand jury records. Petitioners allege that respondent is using Rule 6(e) as a “sword and a shield” to prevent petitioners from substantiating deductible expenses. * * * DiLeo and Mycek, both 50-percent stockholders of Arcelo, had adequate opportunity to file an ex parte 6(e) motion in the United States District Court for the Southern District of New York demonstrating “particularized need” for the grand jury records under Baggot and Sells. [Citations omitted.] Accordingly, we refrain from applying judicial estoppel in the instant case. As discussed above, petitioners had adequate opportunity to file a rule 6(e) motion in the District Court to obtain any grand jury materials needed to prove their cases. It follows that respondent’s conduct did not preclude petitioners from obtaining whatever grand jury materials which were needed to prepare their cases for trial. Consequently, we refuse to shift the burden of going forward to respondent based on petitioners’ unfounded allegation that respondent’s conduct renders these proceedings “inherently unfair and arbitrary.” Petitioners bear the burden of proving that respondent’s determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect. Parks v. Commissioner, supra at 658; Nicholas v. Commissioner, supra at 1064. If the taxpayer feels that the Government’s method of computation is unfair or inaccurate, the burden is on him to show such unfairness or inaccuracy. Price v. United States, supra at 677. Petitioners do not challenge the computational accuracy of respondent’s analysis of the secret bank . accounts. Consequently, we hold that Arcelo understated the taxable income required to be shown on its income tax returns for the taxable years 1978, 1979, 1980, 1981, and 1982 in the amounts set forth in the notices of deficiency. Petitioners further assert that respondent’s bank deposits analysis was defective because respondent ignored leads suggesting that petitioners “had deductible expenses in the form of commercial kickbacks in their commercial printing business.” See Brizell v. Commissioner, 93 T.C. 151 (1989). Respondent counters that petitioners have the burden of proving that Arcelo is entitled to claim any business expense deductions. Of course, when the bank deposits method is employed, “the Government must take into account any non-taxable source or deductible expense of which it has knowledge.” Price v. United States, supra at 677. Respondent, however, is not required to follow any “leads” suggesting that petitioners might have some deductible expenses. Marcello v. Commissioner, 380 F.2d at 497. Rather, petitioners bear the burden of proving that they are entitled to deductions for amounts paid to obtain commercial printing business for Arcelo. Marcello v. Commissioner, supra at 497; Rule 142(a). Mycek and DiLeo testified that checks made payable to cash were actually bribes paid to Robert Petty for the business of Luxo Lamp Corp. Petitioners did not submit any documentary evidence to corroborate the self-serving testimony of Mycek and DiLeo. Consequently, we find that the testimony of Mycek and DiLeo standing alone is insufficient to prove that the checks drawn on the secret bank accounts payable to cash were bribes or kickbacks to obtain printing business for Arcelo. Arcelo’s Fraud Additions Respondent next asserts that “all of the underpayment of tax required to be shown on each of Arcelo’s income tax returns for the taxable years 1978, 1979, 1980, 1981, and 1982 is due to fraud on the part of Arcelo.” Petitioners counter that “Respondent has not proved fraud by clear and convincing evidence.” Section 6653(b) as in effect for the years in issue provided in pertinent part: SEC. 6653(b). FRAUD. — If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * (For 1982, respondent must also establish the specific portion of the underpayment of tax which is attributable to fraud solely for purposes of applying the “50 percent of the interest payable” provisions of section 6653(b)(2).[2]) Respondent has the burden of proving by clear and convincing evidence that some part of an underpayment for each year in issue was due to fraud. Sec. 7454(a); Rule 142(b). Consequently, respondent must establish both that (1) the taxpayer has underpaid his taxes for each year; and (2) some part of the underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). To prove an underpayment, the Commissioner is not required to establish the precise amount of the deficiency determined by him. However, he cannot discharge his burden by simply relying on the taxpayer’s failure to prove error in his determination of the deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969); Pigman v. Commissioner, 31 T.C. 356, 370 (1958). It is only if and when the Commissioner establishes an underpayment by clear and convincing evidence that his deficiency determination will enjoy its usual presumption of correctness. See Compton v. Commissioner, T.C. Memo. 1983-642; Cleveland v. Commissioner, T.C. Memo. 1983-299. As in the usual case, the burden of proof in respect of that determination will then rest with the taxpayer. Respondent can satisfy his burden of proving the first prong of the fraud test, i.e., an underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income in one of two ways. Parks v. Commissioner, 94 T.C. at 661. Respondent may prove an underpayment by proving a likely source of the unreported income. Holland v. United States, 348 U.S. 121 (1954); Parks v. Commissioner, supra at 661; Nicholas v. Commissioner, 70 T.C. at 1066. Alternatively, where the taxpayer alleges a nontaxable source, respondent may satisfy his burden by disproving the nontaxable source so alleged. United States v. Massei, 355 U.S. 595 (1958); Parks v. Commissioner, supra at 661. Respondent submitted into evidence bank records, deposit slips, and checks showing that substantial amounts were deposited into the secret bank accounts. Petitioners stipulated that the secret bank accounts served as a depository for a portion of Arcelo’s gross receipts. Petitioners further stipulated that Arcelo did not include the gross receipts deposited into the secret bank accounts in the gross receipts which it reported on its corporate Federal income tax returns for 1978, 1979, 1980, 1981, and 1982. Therefore, respondent has shown by clear and convincing evidence that Arcelo had underpaid a portion of its corporate taxes during each of the years in issue. Respondent next contends that the record “clearly establishes that Arcelo had the specific purpose and intent to evade taxes which it believed to be owing for the taxable years 1978, 1979, 1980, 1981, and 1982 and that the underpayments of tax were due in each of said years to its intent to evade.” Petitioners counter that “No concrete facts have been presented to show that Arcelo had an intent to cheat the government.” Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982). Respondent’s burden of proving fraud is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer’s entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 224 (1971). Because fraud can rarely be established by direct proof of the taxpayer’s intention, fraud may be proved by circumstantial evidence. Rowlee v. Commissioner, supra at 1123. In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit gave a nonexclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. These badges of fraud include (1) understatement of income; (2) inadequate records; (3) concealment of assets; and (4) engaging in illegal activities. A corporation can act only through its officers and does not escape responsibility for acts of its officers performed in that capacity. Federbush v. Commissioner, 34 T.C. 740, 749 (1960), affd. 325 F.2d 1 (2d Cir. 1963). It follows that corporate fraud necessarily depends upon the fraudulent intent of the corporate officers. Auerbach Shoe Co. v. Commissioner, 216 F.2d 693 (1st Cir. 1954), affg. 21 T.C. 191 (1953); Currier v. United States, 166 F.2d 346 (1st Cir. 1948); Federbush v. Commissioner, supra at 749. In Federbush v. Commissioner, supra at 749, the president of a corporation supplied false information to the accountant who prepared the corporation’s income tax returns. These returns were then signed by the president and “the signing of income tax returns was within the scope of his duties and authority.” Federbush v. Commissioner, supra at 749. Under these circumstances, the evidence that the returns were filed by the corporation with fraudulent intent to evade tax was clear and convincing. Federbush v. Commissioner, supra at 749. Arcelo’s president, Mycek, and secretary/treasurer, DiLeo, opened secret bank accounts which served as a depository for a portion of Arcelo’s gross receipts. Petitioners failed to maintain any books, records, or other documents reflecting transactions made with respect to the secret bank accounts. Mycek and DiLeo failed to inform the accountant who prepared Arcelo’s income tax returns of the existence of the secret bank accounts. Mycek and DiLeo signed Arcelo’s corporate Federal income tax returns in their capacity as officers of Arcelo knowing that a portion of Arcelo’s gross receipts was not included in the gross receipts reported on the returns. Consequently, Mycek and DiLeo systematically failed to report a substantial portion of Arcelo’s gross receipts on its corporate Federal income tax returns for each of the years in issue. Mycek and DiLeo were convicted of conspiring to impede, impelir, obstruct, and defeat respondent’s ability to determine Arcelo’s correct income tax liability for the years in issue. Mycek and DiLeo were also convicted under section 7206(1) of willfully making and subscribing to Arcelo’s corporate income tax returns for 1980 and 1982, respectively, which they did not believe to be true and correct as to every material matter. As officers of Arcelo, Mycek’s and DiLeo’s fraudulent intent is imputed to the corporation. Auerbach Shoe Co. v. Commissioner, supra. Under these circumstances, we hold that respondent has established by clear and convincing evidence that the entire underpayment of tax required to be shown on Arcelo’s income tax returns for each of the years in issue was due to fraud. Section 6661 Respondent next asserts that “Arcelo is hable for an addition to tax under I.R.C. sec. 6661(a) for the taxable year 1982.’’ Petitioners counter that “Arcelo is not hable for a substantial understatement penalty for 1982.” Section 6661(a) provides that “If there is a substantial understatement of income tax for any taxable year, there shah be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement.” In general, “the term ‘Understatement’ means the excess of — (i) the amount of the tax required to be shown on the return for the taxable year, over (ii) the amount of the tax imposed which is shown on the return.” Sec. 6661(b)(2). On its 1982 corporate Federal income tax return, Arcelo reported an income tax liability in the amount of $301.21. Respondent determined a deficiency in Arcelo’s corporate Federal income tax for 1982 in the amount of $24,384.82. Arcelo has failed to prove that respondent’s deficiency determination was erroneous. It follows that the amount required to be shown on Arcelo’s income tax return is $24,686.03 (the amount reported, $301.21, plus the amount of the deficiency, $24,384.82). Consequently, Arcelo’s understatement of income tax is $24,384.82 (the excess of the amount required to be shown on the return, $24,686.03 over the amount shown on the return, $301.21). A substantial understatement occurs if the amount of the understatement of income tax for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $10,000. Sec. 6661(b)(1)(A) and (B). Arcelo substantially understated its income tax liability for 1982 because the amount of the understatement exceeded both 10 percent of the tax required to be shown on the return and $10,000. Therefore, Arcelo is liable for the addition to tax imposed by section 6661(a) for 1982. Section 6661(a) was originally added to the Code by section 323(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 613. As originally enacted, section 6661 provided that there shall be added to the tax an amount equal to 10 percent of the amount of any underpayment attributable to the substantial understatement of income tax liability, applicable to returns due after December 31, 1982 (sec. 323 of the Act, 96 Stat. at 615). In 1986, Congress passed two acts, each of which amended section 6661(a). See Pallottini v. Commissioner, 90 T.C. 498, 501 (1988). The Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, section 1504, 100 Stat. 2085, 2743, generally provided that section 6661(a) is amended by striking out “10 percent” and inserting in lieu thereof “20 percent” effective for returns the due date for which is after December 31, 1986. See Pallottini v. Commissioner, supra at 501. The Omnibus Budget Reconciliation Act of 1986 (OBRA 86), Pub. L. 99-509, section 8002, 100 Stat. 1874, 1951, provided that the addition for substantial understatement will be 25 percent of the underpayment attributable thereto for all additions assessed after the date of the enactment of this act. TRA 86 was passed by the House of Representatives and the Senate on September 25, 1986, and September 27, 1986, respectively. See Pallottini v. Commissioner, supra at 501. OBRA 86 was passed by both the House of Representatives and the Senate on October 17, 1986. See Pallottini v. Commissioner, supra at 501. OBRA 86 was signed into law on October 21, 1986, and TRA 86 was signed into law on October 22, 1986. Pallottini v. Commissioner, supra at 502. In Pallottini v. Commissioner, supra at 503, we held that “OBRA 86 controls over TRA 86” and, thus, “The rate of the addition to tax under section 6661(a) is 25 percent, not 10 percent or 20 percent.” Therefore, the substantial understatement addition is 25 percent of Arcelo’s underpayment attributable to the substantial understatement. Petitioners, however, contend that the provisions in OBRA 86 increasing the rate imposed on an underpayment under section 6661(a) “violate the Ex Post Facto clause of the Constitution.” Respondent replies that “it is well established that the constitutional prohibition against ex post facto laws may not be applied to additions to tax, as petitioners argue. See Bankers Trust Co. v. Blodgett, 260 U.S. 647 (1923).” We agree with respondent. The prohibition against ex post facto laws applies only to penal legislation that imposes or increases criminal punishment for conduct predating its enactment. See Harisiades v. Shaughnessy, 342 U.S. 580, 594 (1952). The ex post facto clause is not applicable to legislation imposing civil liabilities. See Johannessen v. United States, 225 U.S. 227, 242 (1912). Applying these principles, the Supreme Court rejected an ex post facto challenge to Connecticut’s retrospective application of an addition to tax in Bankers Trust Co. v. Blodgett, supra. In Karpa v. Commissioner, 909 F.2d 784 (4th Cir. 1990), affg. T.C. Memo. 1989-535, a taxpayer challenged the imposition of the addition to tax under section 6661(a) at the 25-percent rate on the ground that the increased rate was an ex post facto law. The Fourth Circuit held that the increased addition imposed under former section 6661, as amended by OBRA 86, is a civil sanction. Karpa v. Commissioner, supra at 788. Thus, “Under Bankers’ Trust, 260 U.S. at 652, * * * retroactive application of a civil tax penalty,” such as the increased additions to tax under section 6661(a), “does not offend the ex post facto clause.” Karpa v. Commissioner, supra at 788. Accordingly, we reject petitioners’ argument that the application of the 25-percent rate under section 6661(a) to the underpayment in tax for 1982 violates the ex post facto clause. Petitioners further contend in their brief that no section 6661 addition is applicable to Arcelo because “the new law [Omnibus Budget Reconciliation Act of 1989] repealed the 25 percent penalty provided by the 1986 law and did not leave any penalty to replace it for a return filed before January 1, 1990.” Section 7721, Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2395, repealed section 6661 and recodified the substantial understatement addition as section 6662(b)(2). Specifically, section 7721(c)(2) of OBRA 89 repealed Code section 6661. Section 7721(d) of OBRA 89 made the repeal applicable to returns the due date for which (determined without regard to extensions) is after December 31, 1989. By its terms, OBRA 89 only repealed section 6661 for returns due after December 31, 1989. Thus, OBRA 89 did not repeal section 6661 for returns due prior to January 1, 1990. Sec. 7721(d), OBRA 89, Pub. L. 101-239, 103 Stat. 2400. Petitioners, nonetheless, argue that no section 6661 addition applies “to assessments of 1982 taxes where such assessments are made in 1990 or after” because “the 1986 amendment no longer applies either, as the entire Section 6661 was repealed in 1989.” Petitioners note that “This argument was raised and rejected in Vessio v. Commissioner; T.C. Memo. 1990-565 (Oct. 29, 1990).” In Vessio v. Commissioner, supra, the taxpayer argued that “If OBRA 1986 repealed TEFRA 1982’s version of section 6661, then, by the same reasoning, the Budget Reconciliation Act of 1989 had to have repealed OBRA 1986 for pre-OBRA 1986 tax returns, such as these.” In Vessio v. Commissioner, supra, we stated: OBRA ’86 repealed the provisions of TEFRA with respect to returns due prior to OBRA ’86’s enactment because Congress provided that the 25 percent rate imposed by OBRA ’86 would apply to assessments made after October 21, 1986, even where such assessments relate to returns due prior to such date, provided such returns were due after December 31, 1982. See Karpa v. Commissioner, 909 F.2d 784 (4th Cir. 1990), affg. a Memorandum Opinion of this Court. Congress, however, did not make such a provision when it enacted OBRA ’89, and there is no basis for the analogy which petitioner attempts to draw. [60 T.C.M. 1150, 1151, 59 P-H Memo T.C. par. 90,565 at 2783.] In sum, OBRA 89’s repeal of section 6661 for returns due after December 31, 1989, did not repeal section 6661 for returns due before January 1, 1990. Petitioners, alternatively, contend that “the 10% penalty provided by old Section 6661, as in effect before the 1986 amendment, should govern on the theory that if the 1989 amendment repealed the 1986 amendment, which repealed the 1982 TEFRA provision, then the 1982 provision, i.e. the 10% penalty, has been restored.” As discussed above, OBRA 89 did not repeal section 6661 for returns due prior to January 1, 1990. As a result, section 6661 as amended by OBRA 86 remains in effect for assessments made after October 21, 1986, with respect to returns due prior to January 1, 1990. Accordingly, Arcelo is liable for the substantial understatement addition under section 6661 in the amount equal to 25 percent of the underpayment attributable to the understatement for 1982. Statute of Limitations Petitioners assert that “The assessments against [Arcelo] are time barred because they were made after the expiration of the limitations period.” Respondent counters that: (1) “The deficiencies in income tax due from Arcelo for the taxable years 1978, 1979, 1980, and 1981 may be assessed and collected pursuant to I.R.C. section 6501(c)(1)”; and (2) the deficiency in income tax due from Arcelo for taxable year 1982 may be assessed and collected pursuant to a stipulation. Section 6501(a) generally provides that any tax must be assessed within 3 years after the return is filed. Section 6501(c), however, provides in part: (1) False RETURN. — In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. As discussed above, respondent has established by clear and convincing evidence that Arcelo underpaid its taxes during each of the years in issue and that the underpayments were due to fraud. Moreover, the parties stipulated that the statute of limitations does not bar assessment and collection of the deficiency in income tax due from Arcelo for 1982. Accordingly, the statute of limitations does not bar assessment and collection of the deficiencies in income tax due from Arcelo for the years in issue. Myceks’ and DiLeos’ Deficiencies Respondent next asserts that the Myceks and the DiLeos understated the income tax required to be shown on their income tax returns as follows: 1978 1979 1980 1981 1982 Myceks $14,654 $30,627 *$27,396 [1]$13,276 DiLeos 14,745 28,169 30,825 29,125 $30,740 Petitioners contend that the Myceks and the DiLeos did not understate their income in the amounts indicated. Section 61(a) defines gross income as “all income from whatever source derived,” including gross income derived from dividends. Every person Hable for any tax must maintain books and records sufficient to estabhsh the amount of his or her gross income. Sec. 6001; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). The use of the bank deposits method for computing income has long been sanctioned by the courts. Estate of Mason v. Commissioner, supra at 656. When a taxpayer keeps no books or records and has large bank deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposits method for computing income. Hague Estate v. Commissioner, 132 F.2d 775 (2d Cir. 1943), affg. 45 B.T.A. 104 (1941); Estate of Mason v. Commissioner, supra at 657. From 1978 through 1981, Mycek received certain funds from the secret bank accounts by his receipt and negotiation of checks made payable to him. The Myceks did not report any of the funds received from the secret bank accounts on their Federal income tax returns for 1978, 1979, 1980, and 1981. From 1978 through 1982, DiLeo received certain funds from the secret bank accounts by his receipt and negotiation of checks made payable to him. The DiLeos did not report any of the funds received from the secret bank accounts on their Federal income tax returns for 1978, 1979, 1980, 1981, and 1982. Mycek and DiLeo did not maintain any books or records reflecting the transactions made with respect to the secret bank accounts. Under these circumstances, respondent may reconstruct the Myceks’ and the DiLeos’ gross income under the bank deposits method. Though not conclusive, bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. at 77; Estate of Mason v. Commissioner, supra at 656; see also Hague Estate v. Commissioner, supra at 777-778. The bank deposits method assumes that all money deposited in a taxpayer’s bank account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). Respondent submitted into evidence copies of bank records disclosing all deposits to and disbursements from the secret bank accounts during the years in issue. Respondent analyzed the bank records and prepared schedules which summarized all of the transactions, deposits, and disbursements occurring in the accounts during the years in issue. Consequently, respondent has properly calculated the amounts Mycek and DiLeo received from Arcelo based on the bank deposits method. Petitioners argue that the bank deposits method used by respondent was “defective” because, among other reasons, he did not prove that he checked all leads susceptible of being verified. Respondent counters that petitioners bear the burden of proving that the bank deposit did not result in the receipt of taxable income. We agree with respondent. Petitioners again cite United States v. Slutsky, 487 F.2d 832 (2d Cir. 1973), in support of their contention that respondent did not submit “proper bank deposits proof.” As discussed above, since this is a civil action by the Government to recover a deficiency, the cases involving criminal prosecutions for tax evasion are not apposite because of the greater burden of proof imposed upon the Government in that class of cases. Price v. United States, supra at 677. Respondent’s determination of income tax deficiencies is presumed correct. Halle v. Commissioner, 175 F.2d at 502. Petitioners bear the burden of proving that respondent’s determination of underreported income, computed using the bank deposits method of reconstructing income, is incorrect. Parks v. Commissioner, 94 T.C. at 658; Nicholas v. Commissioner, 70 T.C. at 1064. If the taxpayer feels that the Government’s method of computation is unfair or inaccurate, the burden is on him to show such unfairness or inaccuracy. Price v. United States, supra at 677. Petitioners do not challenge the computational accuracy of respondent’s analysis of the secret bank accounts. Consequently, we hold that Mycek and DiLeo received the amounts set forth in the notices of deficiency. It is well established that when controlling shareholders divert corporate income to themselves, it is proper to treat such diverted funds as constructive dividends for tax purposes. Simon v. Commissioner, 248 F.2d 869, 873 (8th Cir. 1957); Chesbro v. Commissioner, 21 T.C. 123 (1953), affd. 225 F.2d 674 (2d Cir. 1955). From 1978 through 1982, Mycek and DiLeo each owned 50 percent of Arcelo’s stock and served as its president and secretary/treasurer, respectively. Mycek and DiLeo diverted a portion of Arcelo’s gross receipts which were deposited into the secret bank accounts to themselves and did not report the amounts diverted on their income tax returns. Therefore, Mycek and DiLeo received constructive dividends because they were controlling shareholders who diverted corporate income to themselves. Petitioners, however, argue that Mycek and DiLeo did not understate their income because respondent “failed to offer into evidence an analysis of earnings and profits to determine if amounts received by Mycek and DiLeo are dividends or capital gain or nontaxable return of capital.” Respondent contends that Mycek and DiLeo “must bear the burden of proof to establish * * * that the corporation had insufficient earnings and profits to support dividend treatment.” Under sections 301(c)[3] and 316(a),[4] dividends are taxable to the shareholder as ordinary income to the extent of the earnings and profits of the corporation, and any amount received by the shareholder in excess of earnings and profits is considered as a nontaxable return of capital to the extent of the shareholder’s basis in his stock. Any amount received in excess of both earnings and profits of the corporation and the shareholder’s basis in his stock is treated as gain from the sale or exchange of property. See Truesdell v. Commissioner, 89 T.C. 1280, 1294-1295 (1987). The burden of proof is generally on “taxpayers to establish that the corporation did not have earnings and profits equal to the amounts diverted” with respect to deficiencies. DiZenzo v. Commissioner, 348 F.2d 122, 127 (2d Cir. 1965), revg. in part and remanding T.C. Memo. 1964-121; Truesdell v.. Commissioner, supra at 1295-1296. We note that in DiZenzo v. Commissioner, T.C. Memo. 1964-121, we held in a factual situation generally analogous to the one now before the Court that corporate funds diverted by the dominant stockholder of a corporation constitute income to him regardless of whether such funds might be treated as a constructive dividend, and that taxability to the stockholder need not turn upon the existence of corporate earnings and profits, i.e., that tax treatment is to be determined under section 61(a) (gross income defined) rather than section 316(a) (dividend defined). In DiZenzo v. Commissioner, 348 F.2d 122 (2d Cir. 1965), the Second Circuit (to which an appeal would he in this case) rejected this approach, noting in passing that in the case before it (as here) the court was not dealing with sums stolen or embezzled by the taxpayer. On arguing for the approach taken by the Tax Court, the Government in DiZenzo pointed to the difficulty of reconstructing the earnings and profits of the taxpayer in view of the corporation’s hopelessly inadequate books and records. The Second Circuit responded that the answer to this problem is not to give a special meaning to the language of section 316(a), but rather to place the burden on the taxpayers to establish that the corporation did not have earnings and profits equal to the amounts diverted. DiZenzo v. Commissioner, supra at 125-127. We are required to follow the approach taken by the Second Circuit on this issue under the tenets of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), but we also note that this Court in Truesdell v. Commissioner, supra at 1295-1296, has taken the same approach as that of the Second Circuit in DiZenzo. Petitioners did not submit any evidence proving that Arcelo did not have earnings and profits equal to the amounts diverted to Mycek and DiLeo from the secret bank accounts for each of the years in issue. Accordingly, we hold that Mycek and DiLeo understated the dividend income required to be shown on their income tax returns in the amounts set forth in the notices of deficiency. Mycek’s and DiLeo’s Fraud Respondent asserts that all of the underpayment of tax required to be shown on the Myceks’ and the DiLeos’ income tax returns for the years in issue was due to fraud on the part of Mycek and DiLeo. Petitioners contend that respondent has not proven fraud by clear and convincing evidence. See supra p. 872 for relevant statutory provisions. Respondent has the burden of proving by clear and convincing evidence that some part of an underpayment for each year in issue was due to fraud. Sec. 7454(a); Rule 142(b). Respondent states that he may rely upon the doctrine of collateral estoppel (estoppel by judgment) in order to carry his burden of proof on the issue of Myeck’s fraud for 1979 and DiLeo’s fraud for 1980 and 1982. A taxpayer is collaterally estopped from denying civil tax fraud under section 6653(b) when convicted for criminal tax evasion under section 7201 for the same taxable year. Moore v. United States, 360 F.2d 353, 354 (4th Cir. 1966); Tomlinson v. Lefkowitz, 334 F.2d 262, 265 (5th Cir. 1964); Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). Mycek was convicted of income tax evasion under section 7201 for 1979. DiLeo was convicted of income tax evasion under section 7201 for 1980 and 1982. Therefore, Mycek and DiLeo are collaterally estopped from denying civil tax fraud under section 6653(b) for those years. Petitioners, however, contend that “no collateral estoppel exists” because “the transcripts indicate that Mycek and DiLeo pleaded guilty to I.R.C. 7206(1) and not to 7201.” The transcripts of Mycek’s and DiLeo’s allocution hearing submitted into evidence show that Mycek and DiLeo pled guilty to income tax evasion under section 7201. Consequently, we reject petitioners’ contention that Mycek and DiLeo pled guilty to willfully subscribing to false returns under section 7206(1) rather than tax evasion under section 7201. Respondent bears the burden of proving by clear and convincing evidence that Mycek and DiLeo fraudulently underpaid their income taxes for the years not covered by the criminal convictions under section 7201. Respondent must establish that (1) the taxpayer has underpaid his taxes for each year; and (2) some part of the underpayment is due to fraud. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). To prove an underpayment, the Commissioner is not required to establish the precise amount of the deficiency determined by him. However, he cannot discharge his burden by simply relying on the taxpayer’s failure to prove error in his determination of the deficiency. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969); Pigman v. Commissioner, 31 T.C. 356, 370 (1958). It is only if and when the Commissioner establishes an underpayment by clear and convincing evidence that his deficiency determination will enjoy its usual presumption of correctness. See Compton v. Commissioner, T.C. Memo. 1983-642; Cleveland v. Commissioner, T.C. Memo. 1983-299. As in the usual case, the burden of proof in respect of that determination will then rest with the taxpayer. • Respondent can satisfy his burden of proving the first prong of the fraud test, i.e., underpayment, when the allegations of fraud are intertwined with unreported and indirectly reconstructed income in one of two ways. Parks v. Commissioner, 94 T.C. at 661. Respondent may prove an underpayment by proving a likely source of the unreported income. Holland v. United States, 348 U.S. 121 (1954); Parks v. Commissioner, supra at 661; Nicholas v. Commissioner, 70 T.C. at 1066. Alternatively, where the taxpayer alleges a nontaxable source, respondent may satisfy his burden by disproving the nontaxable source so alleged. United States v. Massei, 355 U.S. 595 (1958); Parks v. Commissioner, supra at 661. Respondent submitted into evidence bank records, deposit slips, and checks showing that substantial amounts were deposited into the secret bank accounts. Petitioners stipulated that the secret bank accounts served as a depository for a portion of Arcelo’s gross receipts. Petitioners further stipulated that Mycek and DiLeo received funds from the secret bank accounts by their receipt and negotiation of checks made payable to themselves and did not report those funds on their income tax returns. Therefore, respondent has shown by clear and convincing evidence that the Myceks and the DiLeos received constructive distributions from Arcelo by diverting a portion of Arcelo’s gross receipts to themselves and did not report the amounts received on their income tax returns. Respondent determined that the Myceks and the DiLeos underpaid their taxes for each of the years in issue because the constructive distributions from Arcelo were “dividends” to Mycek and DiLeo. See Simon v. Commissioner, 248 F.2d 869, 873 (8th Cir. 1957); Chesbro v. Commissioner, 21 T.C. 123 (1953), affd. 225 F.2d 674 (2d Cir. 1955). Petitioners, however, assert that respondent failed to prove any underpayments because dividends are not shown in the absence of an earnings and profits analysis. Respondent states that the constructive distributions from Arcelo to Mycek and DiLeo were dividends because “Arcelo’s income tax returns reveal that when the earnings and profits reported by Arcelo are adjusted to reflect the unreported taxable income, income tax liabilities and additions to tax asserted by respondent, there is clearly sufficient earnings and profits to support the subject dividend treatment.” Estate of Stein v. Commissioner, 25 T.C. 940 (1956), affd. 250 F.2d 798 (2d Cir. 1958); Stern Bros. & Co. v. Commissioner, 16 T.C. 295 (1951). For convenience, we again quote section 316(a), which provides in part as follows: SEC. 316(a). GENERAL Rule.— * * * the term “dividend” means any distribution of property made by a corporation to its shareholders— (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made. The Internal Revenue Code does not specifically define the phrase “earnings and profits.” See B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.03 (5th ed. 1987). Earnings and profits in the tax sense, although the term does not correspond exactly to taxable income, does not necessarily follow corporate tax accounting concepts, either. Commissioner v. Wheeler, 324 U.S. 542, 546 (1945). A corporation’s earnings and profits are generally calculated by making certain adjustments to the corporation’s taxable income. See sec. 1.312-6(a), (b), Income Tax Regs.; see also sec. 312. The corporation’s taxable income is increased by the amount of any gross receipts which were not included in taxable income. The corporation’s taxable income is also increased by the amount of any dividends received deduction claimed in computing taxable income. See Weyerhaeuser v. Commissioner, 33 B.T.A. 594, 597 (1935). However, the corporation’s taxable income is decreased by the amount of any Federal income tax liability. The parties submitted into evidence the corporate Federal income tax returns filed by Arcelo for the years in issue. The corporate Federal income tax returns show the amount of taxable income, Federal income tax liability, dividends received deduction, and nondeductible insurance premium reported by Arcelo during each of the years in issue. Based on the evidence in the record, Arcelo had the following amounts of current earnings and profits for each of the years in issue: 1978 1979 1980 1981 1982 Taxable income Increases: $6,121.25 $7,907.46 $5,989.20 $4,807.79 1. Under-reported gross receipts 78,147.52 83,476.90 $102,833.35 81,294.61 91,242.68 2. Dividends received deduction 463.25 161.93 Decreases: 1. Federal tax liability (1,224.25) (1,384.27) (301.21) 2. Insurance premiums (2,412.45) (1,332.74) (1,432.45) (1,526.47) (2,638.89) 3. Deficiency (25,724.76) (21,959.47) (25,698.78) (21,663.52) (24,384.82) 4. Fraud additions (12,862.38) (10,979.74) (12,849.39) (10,831.76) Current earnings and profits 55,370.56 54,007.43 64,722.38 51,244.43 57,893.79 Respondent has submitted evidence showing that Arcelo had current earnings and profits during each of the years in issue. Accordingly, respondent has shown by clear and convincing evidence that Mycek and DiLeo received dividend income during the years in issue, and, thus, Mycek -fld DiLeo underpaid their income tax during each of the years in issue. Respondent contends that the record clearly establishes that Mycek and DiLeo had the specific purpose and intent to evade taxes which they believed to be owing for the years in issue and that the underpayments of tax were due to their intent to evade. Petitioners counter that no concrete facts have been presented to show that Mycek and DiLeo had an intent to cheat the Government. Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Professional Services v. Commissioner, 79 T.C. 888, 930 (1982). Respondent’s burden of proving fraud is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer’s entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 224 (1971). Because fraud can rarely be established by direct proof of the taxpayer’s intention, fraud may be proved by circumstantial evidence. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). As noted earlier, supra at 875, in Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit gave a nonexclusive list of circumstantial evidence which may give rise to a finding of fraudulent intent. These badges of fraud include (1) understatement of income; (2) inadequate records; (3) concealment of assets; and (4) engaging in illegal activities. A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. See Holland v. United States, 348 U.S. at 132; Truesdell v. Commissioner, 89 T.C. at 1302. Arcelo’s president, Mycek, and secretary/treasurer, DiLeo, opened secret bank accounts which served as a depository for a portion of Arcelo’s gross receipts. Mycek and DiLeo withdrew funds from the secret bank accounts over a period of years and did not report the funds withdrawn on their Federal income tax returns. Mycek and DiLeo did not maintain any books or records reflecting transactions made with respect to the secret bank accounts. Mycek was convicted of income tax evasion under section 7201 for 1979. DiLeo was convicted of income tax evasion under section 7201 for 1980 and 1982. Under these circumstances, we hold that respondent has established by clear and convincing evidence that the entire underpayment of taxes required to be shown on Mycek’s and DiLeo’s income tax returns for the years in issue was due to fraud. Statute of Limitations Petitioners assert that the assessments against the Myceks and the DiLeos are time barred because they were made after the expiration of the limitations period. Respondent counters that the deficiencies in income tax due from the Myceks and the DiLeos for the years in issue may be assessed and collected pursuant to section 6501(c)(1). Section 6501(a) generally provides that any tax must be assessed within 3 years after the return is filed. Section 6501(c), however, provides in part: (1) False RETURN. — In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. As discussed above, respondent has established by clear and convincing evidence that Mycek and DiLeo underpaid their taxes for the years in issue and that the underpayments were due to fraud. Accordingly, the statute of limitations does not bar assessment and collection of the deficiencies in income tax due from the Myceks and the DiLeos for the years in issue pursuant to section 6501(c)(1). Respondent also asserts that the deficiencies in tax may be assessed and collected pursuant to section 6501(e)(1). We do not, however, need to consider whether section 6501(e)(1) applies because section 6501(c)(1) applies. Innocent Spouse Petitioners next assert that Michele Mycek and Mary DiLeo Eire entitled to “relief from any liability that may be determined herein” because they were innocent spouses within the meaning of section 6013(e). Respondent counters that Michele Mycek and Mary DiLeo are not entitled to innocent spouse relief under section 6013(e) on the grounds that (1) petitioners untimely raised this issue for the first time on brief; and (2) petitioners have failed to satisfy their burden of proving that section 6013(e) is applicable. It is well settled that issues raised for the first time on brief will not be considered — when to do so prevents the opposing party from presenting evidence that he might have if the issue had been timely raised. Shelby U.S. Distributors, Inc. v. Commissioner, 71 T.C. 874, 885 (1979). In their petitions, petitioners did not claim that Michele Mycek and Mary DiLeo were innocent spouses under section 6013(e). Respondent states that petitioners formEilly raised this issue for the first time in their opening brief and did not even advise respondent’s counsel of their intention to do so until less than 2 days before trial. Under these circumstances, respondent did not have an opportunity to present evidence with respect to whether Michele Mycek or Mary DiLeo were innocent spouses. Due to unfair surprise and prejudice to respondent, this Court is under no obligation to consider whether Michele Mycek or Mary DiLeo were innocent spouses pursuant to section 6013(e). Nonetheless, even if we were to consider this issue, petitioners have failed to satisfy their burden of proving that section 6013(e) is applicable. Among other requirements, section 6013(e) provides that petitioners must show that in signing the returns Michele Mycek and Mary DiLeo “did not know, and had no reason to know, that there was such substantial understatement.” Sec. 6013(e)(1)(C). Michele Mycek and Mary DiLeo are in the best position to know and may be the only persons who do know whether they did not know and had no reason to know that there was a substantial understatement. Yet, Michele Mycek and Mary DiLeo did not testify at trial. Instead, petitioners rely exclusively on the testimony of Mycek and DiLeo to establish that their spouses did not know or have reason to know of the substantial understatements. We find that Mycek’s and Dileo’s testimony is insufficient to prove that their spouses did not know or have reason to know of the substantial understatements. Therefore, Michele Mycek and Mary DiLeo are not entitled to relief from any tax liability under the innocent spouse provisions of section 6013(e). Defective Proceeding Petitioners next assert on brief that these “proceedings were so defective that, for that reason alone, the deficiency must be vacated and the petition must be granted.” In support of their assertion, petitioners claim that Special Agent Kirschen’s participation in these cases was a “flagrant violation” of rule 6(e) because United States v. Sells Engineering, Inc., 463 U.S. 418 (1983), bars a person who assisted in a grand jury investigation from participating in a subsequent civil proceeding arising out of the same investigation. Special Agent Philip B. Kirschen (special agent) of the Internal Revenue Service’s Criminal Investigation Division was assigned to the grand jury investigation of Mycek and DiLeo. The special agent fell within the rule 6(e)(3)(A)(ii) description of “government personnel * * * deemed necessary * * * to assist an attorney for the government in the performance of such attorney’s duty to enforce federal criminal law.” Shortly before the trial of this case, respondent’s counsel requested the special agent to remove the bank records submitted to the grand jury by Chase, Citibank, and CBT from the boxes which contained grand jury records. Therefore, the special agent assisted respondent’s counsel in a limited capacity prior to trial. In United States v. Sells Engineering, Inc., supra at 427, the Supreme Court held that attorneys in the civil division of the Justice Department and their assistants and staff may not obtain automatic disclosure of grand jury materials under rule 6(e)(3)(A)(i), Federal Rules of Criminal Procedure, but must instead seek a rule 6(e)(3)(C)(i) court order for access to such materials. The Supreme Court’s holding in Sells Engineering does not in any way suggest that a person who conducted or assisted in the grand jury investigation is barred from participating in any subsequent civil proceeding arising out of the same investigation. Therefore, petitioners’ assertion that Sells Engineering bars a person who assisted in a grand jury investigation from participating in a subsequent civil proceeding is without foundation. Petitioners next assert that respondent had “unfair discovery advantages” due to the special agent’s participation in these cases. Petitioners cite our opinions in Universal Manufacturing Co. v. Commissioner, 93 T.C. 589 (1989), and Westreco, Inc. v. Commissioner, T.C. Memo. 1990-501, in support of their assertion that “unequal access to evidence will not be condoned.” In Universal Manufacturing and Westreco, we limited respondent’s ability to use information in the cases before us which had been previously obtained through the use of administrative summonses because the information developed pursuant to the summonses circumvented our discovery rules and gave respondent a discovery advantage not enjoyed by the taxpayer. In Ash v. Commissioner, 96 T.C. 459 (1991), we modified our holdings in Universal Manufacturing and Westreco by limiting the circumstances in which information obtained through the issuance of administrative summonses will be excluded from the case. Petitioners’ reliance on Universal Manufacturing and Westreco is misplaced because respondent’s use of the special agent did not circumvent our discovery rules or give respondent’s counsel an unfair discovery advantage. Respondent’s counsel used the special agent to separate the bank records from the grand jury materials and to obtain copies of judgments of conviction. The record does not contain any evidence indicating that the special agent disclosed information about matters occurring before the grand jury to respondent’s counsel in violation of rule 6(e). To the contrary, the record shows that respondent’s counsel was very careful to avoid asking the special agent any questions which might lead to a disclosure of matters occurring before the grand jury. Consequently, respondent’s counsel did not enjoy a discovery advantage by retaining the special agent to assist him. Petitioners claim nonetheless that “The hollow alibis that Kirschen was not disclosing 6(e) information to respondent’s counsel are betrayed by his role as respondent’s representative or respondent’s essential person.” Respondent counters that “[the special agent’s] designation as a representative of respondent * * * was for very limited purposes and did not involve his disclosure of information in violation of Fed.R.Crim.P. 6(e).” Rule 145(a) provides: (a) Exclusion: At the request of a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion. This Rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of such party’s cause. At trial, petitioners requested the Court to exclude all witnesses from the courtroom so that they could not hear the testimony of other witnesses pursuant to Rule 145(a). This Court permitted the special agent to remain in the courtroom after respondent’s counsel designated him as either respondent’s “representative” or respondent’s “essential” person within the meaning of Rule 145(a)(2) or (3). Respondent’s designation of the special agent as his representative or essential person under Rule 145(a) does not establish that the special agent disclosed information about the grand jury to respondent’s counsel in violation of rule 6(e). Therefore, petitioners have failed to show that respondent’s counsel had an unfair discovery advantage by designating the special agent as his representative or essential person. Accordingly, and to reflect the foregoing, Decisions will be entered under Rule 155. Sec. 6653(b)(2) provides: (2) Additional amount for portion attributable to fraud. There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601— (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax). (The computation of the understatement of taxable income for the taxable years 1980 and 1981 reflects respondent’s concession that the Myceks are entitled to claim additional interest expense deductions in the amounts of $2,584 and $5,266, respectively.) Sec. 301(c) states as follows: SEC. 301(c). Amount Taxable. — In the case of a distribution to which subsection (a) applies. (1) Amount constituting dividend. — That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. (2) Amount applied against basis. — That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) Amount in excess of basis.— (A) In general. — Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property. (B) Distributions out of increase in value accrued before march 1, 1913. — That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax. Sec. 316(a) states in part as follows: SEC. 316(a). General Rule — For purposes of this subtitle, the term “dividend” means any distribution of property made by a corporation to its shareholders— (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close, of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.