LEROY K. AND RITA B. JACKSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jackson v. Commissioner
Docket No. 12782-89.
United States Tax Court
T.C. Memo 1992-158; 1992 Tax Ct. Memo LEXIS 157; 63 T.C.M. (CCH) 2438; T.C.M. (RIA) 92158; March 18, 1992, Filed *157 Decisions will be entered under Rule 155. During 1985 and 1986, Ps operated two Schedule C businesses. Ps did not maintain or produce adequate records with regard to their business activities. In 1985, Ps claimed rental expense deductions with respect to property that was vacant and subsequently condemned in 1985. R determined under the bank deposits method of analysis that Ps understated the taxable income from their business activities and also disallowed various claimed business expenses that Ps could not ysubstantiate. R disallowed Ps' rental expense deductions on the grounds that the property was not held for the production of income, and Ps were unable to substantiate any of their claimed deductions. R also determined that Ps are liable for the additions to tax under secs. 6653(a) and 6661, I.R.C.Held, R's determinations are sustained. LeRoy K. Jackson and Rita B. Jackson, pro se. Elizabeth Downs, for respondent. NIMS
NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(1)(A)
Sec. 6661
1985
$ 21,244
[1] $ 1,062
--
$ 5,311
1986
12,944
--
[2] $ 647
3,236
*158 (Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.) Respondent also determined that due to the adjustments to petitioners' income in 1985, petitioners' claimed earned income credit of $ 455 for that year must be recaptured. After concessions, the issues for decision are: (1) Whether petitioners understated the taxable income attributable to their business activities in the amounts determined by respondent; (2) whether petitioners are entitled to business expense deductions in excess of those allowed by respondent; (3) whether petitioners are entitled to rental expense deductions for 1985 with respect to property that they owned in California; and (4) whether petitioners are liable *159 for the additions to tax under sections 6653(a) and 6661. Respondent's determination with respect to the recapture of petitioners' 1985 claimed earned income credit is an automatic adjustment which will be resolved by our decision of the primary issues. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. LeRoy K. Jackson and Rita B. Jackson (petitioners) resided in Woodlands, Texas, at the time of the filing of the petition herein. Petitioners filed joint Federal income tax returns for 1985 and 1986. During the years in issue, Mrs. Jackson received gross income from operating a physical therapy business, identified as "Jackson Physical Therapy Services"(JPTS) on Schedule C of petitioners' returns. Petitioners reported gross revenues and net losses from the operation of JPTS in 1985 and 1986 as follows: Year
Gross Revenues
Net Losses
1985
$ 11,225
$859
1986
13,100
70
In 1985 and 1986, Mrs. Jackson also earned wages from UpJohn Healthcare Services, Inc., in the respective amounts of $ 13,370.36 and $ 17,776.14. These amounts were properly reported *160 on petitioners' 1985 and 1986 returns. During the years in issue, Mr. Jackson received gross income from operating a building maintenance business. In 1985, Mr. Jackson identified his business as "Building Maintenance Services" (BMS) on Schedule C of petitioners' 1985 return. In 1986, Mr. Jackson identified his business as "Jackson Enterprises" (JE) on Schedule C of petitioners' 1986 return. BMS operated as a franchise of Janiking, Inc. (Janiking), for a part of 1985. Because BMS and Janiking's management were unable to resolve certain disagreements concerning BMS's franchise agreement with Janiking, BMS ceased to work on behalf of Janiking and began working independently. This continued into 1986 when Mr. Jackson operated JE. While associated with Janiking for part of 1985, BMS received statements each month which stated BMS's gross income, deductions, and net income with respect to work done on behalf of Janiking. These statements were produced during respondent's audit of petitioners' returns but were not offered at trial. Petitioners did not maintain or produce any other records with respect to their business income attributable to BMS in 1985 or JE in 1986. Petitioners *161 reported gross revenues and net losses from the operation of BMS in 1985 and JE in 1986 as follows: Year
Gross Revenues
Net Losses
1985 - BMS
$56,497
$ 5,381
1986 -JE
30,591
2,165
Petitioners maintained two bank accounts during 1985 and 1986. Although petitioners intended one of the bank accounts to be used for business transactions and the other for personal transactions, petitioners failed to keep the accounts separate. Petitioners' total bank deposits in 1985 and 1986 equaled $ 102,098 and $ 87,380, respectively. In addition, petitioners withheld cash from the deposits in 1985 and 1986 totaling $ 5,361 and $ 9,121, respectively. OPINION Respondent's Adjustments
In determining the amount of petitioners' total bank deposits, respondent made allowances for transfers of funds between accounts. Respondent also determined that $ 3,170 of petitioners' deposits in 1986 were from nontaxable sources. Thus, respondent determined that the amounts of petitioners' gross receipts for 1985 and 1986 were as follows: 1985
1986
Total deposits
$ 102,098
$ 87,380 Cash withheld
5,361
9,121 Nontaxable deposits
--
(3,170)
Gross receipts
$ 107,459
$ 93,331 *162 The following table indicates petitioners' claimed business expense deductions for 1985 and 1986 that are in issue, the amounts of the deductions which respondent has allowed, and the amounts of the adjustments made to petitioners' taxable income that are presently disputed. (Deductions attributable to BMS, JE, and JPTS are referenced as such in parentheses.) 1985
Item
Claimed
Allowed
Adjustment
Office expenses (BMS)
$ 5,997
$ 703
$ 5,294
Advertising (BMS)
5,971
4,797
1,174
Insurance (BMS)
6,432
5,266
1,166
Wage expense (BMS)
21,981
18,604
3,377
Office expenses (JPTS)
786
--
786
Car and truck (JPTS)
6,366
3,953
2,413
Insurance (JPTS)
563
--
563
Total
$ 48,096
$ 33,323
$ 14,773
1986
Item
Claimed
Allowed
Adjustment
Supplies (JE)
$ 9,829
$ 7,568
$ 2,261
Car and truck (JE)
7,422
5,064
2,358
Insurance (JE)
847
547
300
Wage expense (JE)
7,395
6,285
1,110
Car and truck (JPTS)
6,467
4,541
1,926
Insurance (JPTS)
1,642
--
1,642
Total
$ 33,602
$ 24,005
$ 9,597
During the audit, petitioners provided respondent's revenue agent with canceled checks and some receipts to substantiate their deductions. Most of the canceled checks *163 produced by petitioners during the audit were made payable to cash and were endorsed by them. Respondent allowed all deductions that petitioners were able to substantiate with the canceled checks and receipts. Respondent further allowed petitioners to deduct car and truck expenses based on reconstructed business mileage provided by petitioners. Petitioners did not maintain or produce any records of BMS's or JE's employees and the employees' salaries (including Mr. Jackson's), nor did petitioners maintain or produce any records or receipts relating to the amount of claimed deductions that respondent did not allow. Petitioners claimed $ 5,115 in rental expense deductions on Schedule E of their 1985 income tax return in relation to a house in Palo Alto, California (California property), which was vacant in 1985. The California property was not habitable in 1985, and petitioners did not report any rental income attributable thereto on Schedule E of their 1985 return. The California property was abandoned by petitioners in 1985 and was thereafter condemned by the city in the same year. Respondent disallowed the rental expense deductions in their entirety. Of the $ 5,115 claimed *164 rental expense deductions on Schedule E, $ 2,526 was categorized as mortgage interest. Petitioners also claimed the same $ 2,526 in mortgage interest on Schedule A of their 1985 return, which respondent allowed. Petitioners did not maintain or produce any records or receipts with respect to their claimed rental expense deductions attributable to the California property. Unreported Income
The first issue is whether petitioners failed to report gross income attributable to their business activities for 1985 and 1986 in the respective amounts of $ 28,544 and $ 23,312. Section 61(a) defines gross income as "all income from whatever source derived", including gross income derived from business. Every person liable for any tax must maintain books and records sufficient to establish the amount of his or her gross income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991). Where a taxpayer fails to maintain or produce adequate books and records, respondent is authorized to compute the taxpayer's taxable income by any method which, in respondent's opinion, clearly reflects income. Sec. 446; Holland v. United States, 348 U.S. 121, 130-132 (1954). *165 In this regard, the use of the bank deposits method for computing income has long been sanctioned by the courts. DiLeo v. Commissioner, supra; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the present case, petitioners failed to maintain and produce adequate books and records with respect to their business activities. Respondent therefore used the bank deposits method to reconstruct petitioners' income derived from the operation of their business activities. Petitioners do not challenge the propriety of respondent's use of this method. Bank deposits are prima facie evidence of income. Boyett v. Commissioner, 204 F.2d 205 (5th Cir. 1953), affg. a Memorandum Opinion of this Court dated March 14, 1951; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method assumes that all money deposited in a taxpayer's account during a given period constitutes taxable income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964); DiLeo v. Commissioner, supra at 868. However, when *166 the bank deposits method is employed, any nontaxable source or deductible expense of which respondent has knowledge must be taken into account in determining the amount of taxable income. Price v. United States, supra; DiLeo v. Commissioner, supra.
Respondent determined under the bank deposits method that petitioners' gross receipts from their business activities, after taking into account nontaxable sources and transfers between accounts, equaled $ 107,459 and $ 93,331 for 1985 and 1986, respectively. In reconciling this amount with the amount of income reported on petitioners' returns, respondent determined that petitioners underreported their income for 1985 and 1986 in the respective amounts of $ 28,544 and $ 23,312. Petitioners bear the burden of proving that respondent's determination of unreported income, computed using the bank deposits method, is incorrect. Parks v. Commissioner, 94 T.C. 654, 658 (1990). Petitioners have failed to prove that respondent's determination of unreported income for the years in dispute is incorrect. Petitioners assert that respondent failed to take into account nontaxable *167 income which they received in 1985 and 1986. Petitioners did not offer any documentary evidence to support this assertion. They base their assertion solely on their testimony which, as discussed below, we find to be vague and lacking in credibility. Petitioners' testimony can be briefly summarized as follows. Petitioners testified that they received $ 8,000 in 1985 from a cousin (who has since passed away), which amount represented some portion of a life insurance policy held by the cousin on the life of Mrs. Jackson's mother. According to petitioners, the payment was received by way of several money orders of unstated amounts which "could have been deposited" in either of petitioners' two bank accounts. Petitioners also testified that they received "about $ 6,500" in 1986 from a settlement of a lawsuit which concerned landscaping work that was performed for them improperly. Petitioners were not certain whether they were represented by an attorney or when they received the settlement money. Petitioners lastly testified that they "sold things" in 1985 and 1986, and they had transfers between accounts which they "estimated" to equal $ 1,000 a month for both 1985 and 1986. The *168 plausibility of petitioners' testimony deserves little discussion. Petitioners did not offer any corroborative evidence with regard to the life insurance policy, the unnamed cousin has passed away, and no specific deposit items were identified as the $ 8,000 in life insurance proceeds. Likewise, petitioners did not present any evidence to support their claim with respect to the lawsuit settlement, such as copies of pleadings or even the name of the landscaping company. In fact, petitioners did not have a record of the check they received and could not identify any deposits that reflected the payment. With respect to their claim that they "sold things" in 1985 and 1986, no specific items were identified or amounts alleged to have been received. Lastly, with respect to the transfers between accounts, petitioners never attempted to identify any particular deposits that reflected such transactions. In addition, we found that respondent made allowances for transfers of funds between accounts when determining the amount of total bank deposits. This finding was based upon the testimony of respondent's agent which was straightforward and credible. In short, petitioners' self-serving *169 and totally uncorroborated testimony that they received nontaxable income in the years in issue is insufficient to meet their burden of proof. See Tokarski v. Commissioner, supra. Accordingly, we hold that petitioners failed to report gross income attributable to their business activities for 1985 and 1986 in the respective amounts of $ 28,544 and $ 23,312. Business Expenses
The next issue is whether petitioners are entitled to claimed business expense deductions in excess of those allowed by respondent. (The specific items and amounts of deductions that are in dispute have been set out above and will not be repeated here.) Deductions are a matter of legislative grace, and petitioners bear the burden of proving their entitlement to any deductions claimed. Rule 142(a); New Colonial Co. v. Helvering, 292 U.S. 435, 440 (1934). Based on the record before us, we conclude that petitioners have failed to establish their entitlement to the claimed deductions in excess of those allowed by respondent. Petitioners did not offer any documentary evidence at trial to substantiate their claimed deductions. The only evidence offered by petitioners *170 is their unsupported and vague testimony which we find lacking in credibility. In our view, petitioners did not establish that they incurred any expenses beyond the significant amounts which respondent allowed as deductions. Petitioners did not attempt to reconstruct in any way the amount or nature of any expenses which they contend were paid. Moreover, nothing in the record before us even remotely provides us with a basis upon which an estimate may be made. See Williams v. United States, 245 F.2d 559 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Accordingly, we sustain respondent's determination on this issue. Rental Expenses
We next must decide whether petitioners are entitled to the claimed rental expense deductions with respect to the California property. Petitioners claimed $ 5,115 in rental expense deductions on Schedule E of their 1985 joint income tax return in relation to the vacant California property. Section 212(2) provides that in the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year for the management, *171 conservation, or maintenance of property held for the production of income. Respondent disallowed petitioners' rental expense deductions on the grounds that the California property was not held for the production of income and that petitioners failed to substantiate any of the claimed deductions. Petitioners bear the burden of proving that respondent's determination is erroneous. Rule 142(a). Petitioners did not offer any documentary evidence at trial to establish that the California property was held for the production of income or to substantiate their claimed deductions. The only evidence offered by petitioners is their unsupported and vague testimony which we find lacking in credibility. The California property was not habitable in 1985, and petitioners did not report any rental income attributable thereto on Schedule E of their 1985 return. The California property was abandoned by petitioners in 1985 and was thereafter condemned in the same year. Petitioners presented no evidence that the house had ever been rented in any year or that they made any efforts to attempt to rent the property in 1985 or any year prior to 1985. Petitioners also failed to maintain any records *172 or receipts with respect to the California property. Based on the record before us, we conclude that petitioners have failed to establish that the California property was held for the production of income. Moreover, even if the California property were held for the production of income, petitioners have presented no evidence to substantiate their claimed rental expense deductions. (We note that respondent allowed $ 2,526 as a mortgage interest deduction on Schedule A of petitioners' 1985 return. This amount was also claimed by petitioners as a part of the $ 5,115 rental expense deductions on Schedule E of their 1985 return.) Accordingly, we sustain respondent's determination that petitioners are not entitled to the rental expense deductions claimed on Schedule E of their 1985 return with respect to the California property. Additions to Tax
Respondent determined that petitioners are liable for the negligence additions to tax under section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986. Sections 6653(a)(1) and 6653(a)(1)(A) impose an addition to tax equal to five percent of the underpayment of tax if any part of the underpayment is due to negligence. *173 Sections 6653(a)(2) and 6653(a)(1)(B) impose an additional liability of 50 percent of the interest due on the underpayment of tax attributable to negligence. Negligence is defined as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Respondent's determination of negligence is presumed to be correct, and petitioners have the burden of proving that the determination is erroneous. Rule 142(a). Petitioners' substantial omission of income in each year, together with their failure to maintain adequate books and records and lack of substantiation of claimed deductions, is strong evidence of negligence. See Axelrod v. Commissioner, 56 T.C. 248, 258-259 (1971). Petitioners offered no evidence to the contrary and thus failed to prove that respondent's determination is erroneous. Accordingly, we hold that petitioners are liable for *174 the negligence additions to tax under section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986. Respondent also determined that petitioners are liable for the addition to tax under section 6661(a) for the years in issue. Section 6661(a) imposes an addition to tax when there is a "substantial understatement of income tax for any taxable year". As applicable here, the rate of the addition to tax under section 6661(a) is equal to 25 percent of the underpayment attributable to the substantial understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). Section 6661(b)(2)(A) defines "understatement" to mean the excess of the amount of tax required to be shown on the return over the amount of tax actually reported on the return. This understatement will be "substantial" if the amount of such understatement exceeds the greater of 10 percent of the amount of tax required to be shown on the return for the taxable year, or $ 5,000. Sec. 6661(b)(1)(A). The amount of the understatement, however, is reduced by the portion of the understatement attributable to any non-tax shelter item for which there was either substantial authority for the taxpayer's *175 return position or adequate disclosure of the relevant facts affecting such item's tax treatment. Sec. 6661(b)(2)(B). Having sustained respondent's determinations above, it follows that petitioners substantially understated their income tax liability for 1985 and 1986. This is so because the amount of understatement for each year exceeded $ 5,000. Sec. 6661(b)(1)(A). Petitioners have not argued, nor does the record support, that the 1985 and 1986 understatements of tax are to be reduced under section 6661(b)(2)(B). Accordingly, we hold that petitioners are liable for the addition to tax under section 6661(a) for the years in issue. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. Plus an addition to tax under section 6653(a)(2)↩ equal to 50 percent of the interest payable on the deficiency. 2. Plus an addition to tax under section 6653(a)(1)(B)↩ equal to 50 percent of the interest payable on the deficiency.